Argued and submitted January 5, 2005, affirmed April 26, 2006

In the Matter of
the Mary C. Dobyns Irrevocable Living Trust
under Agreement dated July 31, 1995,
between Mary C. Dobyns as Trustor
and Joseph A. English as Trustee.

Dorothy GENERAUX,
Sharon Kalister, Sandra Kalister,
and Scott Kalister,
*Appellants,*

*v.*

Mary C. DOBYNS,
*Respondent.*

52-03-00464; A121734

134 P3d 983

Barry Adamson argued the cause for appellants. With him on the brief were Ron Greenen and Greenen & Greenen, PLLC.

Judith A. Giers argued the cause for respondent. With her on the brief were K. Patrick Neill, Arthur J. Clark, and Hershner, Hunter, Andrews, Neill & Smith, LLP.

Before Haselton, Presiding Judge, and Brewer, Chief Judge,* and Ortega, Judge.

BREWER, C. J.

---

\* Brewer, C. J., *vice* Ceniceros, S. J.

## BREWER, C. J.

This case concerns the attempted rescission of the Mary C. Dobyns Irrevocable Trust by petitioner, Mary C. Dobyns, who is both the trustor and a beneficiary of the trust. Petitioner sought rescission on the basis of an asserted mistake of law, namely, that the creation of the trust would result in tax savings to her estate. Beneficiaries objected.[1] The trial court entered a judgment rescinding the trust, and beneficiaries appeal. On *de novo* review, ORS 19.415(3), we affirm.

The pertinent facts are undisputed. Petitioner created the trust in 1995. By its terms, the trust provided that beneficiaries are beneficiaries of 50 percent of the residuary estate. The trust also made provision for petitioner during her lifetime:

> "The Trustee shall pay or apply from income of the trust estate as the Trustor shall from time to time direct. Should the Trustee at any time consider the Trustor, by reason of illness or accident, or for any other reason, to be unable to direct it with respect to the disposition of such income, the Trustee shall expend for the Trustor such sums from the income and may invade principal, as it shall deem necessary or advisable for her care, support, maintenance and reasonable comforts."

The trust expressly stated that it is irrevocable: "Trustor specifically acknowledges that Trustor may not revoke this Trust in whole or in part once Trustor's assets have been delivered to Trustee." Petitioner delivered assets to the trust the day after the trust was created.

Petitioner did not testify before the trial court. Instead, the parties stipulated that, if she had testified, she would have stated that her sole purpose in creating the trust was to save estate taxes. Over beneficiaries' objection, the trial court admitted into evidence a letter that petitioner's

---

[1] Dorothy Generaux, Sharon Kalister, Sandra Kalister, and Scott Kalister are the beneficiaries of the trust who objected to petitioner's petition for rescission before the trial court. They were collectively referred to as "beneficiaries" in the trial court proceeding, and, although they are not only the beneficiaries of the trust, we refer to them by the same designation on appeal.

then-attorney, Clark, wrote to petitioner a few months after the creation of the trust. In the letter, Clark reviewed petitioner's estate plan and encouraged her to place more assets in trust, stating that doing so would result in significant savings in estate taxes.

The parties further stipulated, however, that the trust as written would not save any estate taxes. Petitioner made that discovery after the trust was created, and she then filed an action against Clark for malpractice. Petitioner also attempted to rescind the trust, first by trying to secure the approval of all trust beneficiaries. After failing to do so, petitioner filed in the probate division of the trial court a petition for modification and rescission of trust under ORS 128.115 to 128.175. In the petition, petitioner described herself as "Trustor and Petitioner" in the caption, and as "trustor" throughout, and she stated that she is a beneficiary as well as the trustor of the trust. Petitioner also alleged that "[s]he ha[d] no adequate remedy at law[,]" and she requested rescission of the trust and "[s]uch further orders as may be just and equitable." In addition, petitioner requested that the court modify the trust by naming a new successor trustee and an alternate successor trustee.[2] After a hearing, the trial court entered a judgment rescinding the trust, but the judgment did not specify whether rescission was granted as a statutory or a common-law remedy. On appeal, beneficiaries assert a jurisdictional challenge, and they make two assignments of error on the merits.

We first consider beneficiaries' jurisdictional challenge, which consists of the following two arguments: (1) the trial court lacked subject matter jurisdiction and (2) petitioner, in her role as trustor, lacked constitutional standing to rescind the trust. We address those arguments in turn.

Beneficiaries argue that the statutory provisions that authorize changes to trusts do not authorize petitions for relief by trustors and that, because petitioner filed her petition solely in her status as trustor, the trial court therefore

---

[2] Petitioner did not seek to modify the trust by deleting the provision that the trust is irrevocable.

lacked subject matter jurisdiction. We disagree. Subject matter jurisdiction exists when a court has authority to adjudicate the general subject involved. *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994). That authority may be granted by constitution, statute, or common law. *Weatherspoon v. Allstate Ins. Co.*, 193 Or App 330, 334, 89 P3d 1277, *rev den*, 337 Or 327 (2004). Under the Oregon Constitution, jurisdiction is invested in the circuit courts unless a statute or rule of law states otherwise. Or Const, Art VII (Original), § 9; Or Const, Art VII (Amended), § 2; *Greeninger*, 127 Or App at 438. Here, petitioner's status as a trustor does not affect the trial court's jurisdiction. Circuit courts have the authority to deal with the *general* subject involved in petitioner's petition, that is, trusts. *See* ORS 111.055(1) (transferring probate jurisdiction to the circuit court in Lane and other counties); ORS 111.085 (stating that the jurisdiction of the probate courts "includes, but is not limited to" a variety of matters relating to wills, personal representatives, and trustees); *see also Stipe v. First National Bank*, 208 Or 251, 301 P2d 175 (1956) (applying common-law principles to evaluate the purported revocation of a trust and assuming that the circuit court had jurisdiction). Accordingly, we reject beneficiaries' argument that the trial court lacked subject matter jurisdiction.

■■■ Beneficiaries also argue that petitioner lacked constitutional standing to seek rescission of the trust because, as the trustor of an irrevocable trust, she has no continuing interest in the trust. Again, we disagree. A person has standing if resolution of the issues presented will have a practical effect on his or her rights. *Utsey v. Coos County*, 176 Or App 524, 543, 32 P3d 933 (2001), *rev dismissed as moot*, 335 Or 217 (2003). Depending on the outcome of the case, petitioner will have either sole and complete control over the trust assets or limited rights to the income and principal from the trust. For that reason, petitioner has constitutional standing.

■■■ We turn to beneficiaries' arguments on the merits. We begin with beneficiaries' second assignment of error. Beneficiaries argue that the trial court erred in admitting into evidence the letter from Clark to petitioner reviewing the status of her estate plan. Beneficiaries argue that Clark's assertion in the letter that the purpose of the trust was to

save estate taxes constituted inadmissible hearsay. Petitioner replies that the letter was offered not for the truth of that assertion; indeed, the parties have agreed that the assertion of tax savings was *not* true. Rather, petitioner argues, the letter was offered as evidence of petitioner's belief that the creation of the trust would save estate taxes. That asserted fact was relevant to establish a disputed element of petitioner's claim, namely, that she was mistaken as to the legal effect of the trust. It follows, petitioner reasons, that the assertion of intended tax savings was not offered for its truth and, therefore, was not hearsay.

Petitioner is correct. "An important nonhearsay use of out-of-court statements is to prove their effect upon a person who heard the statement, where such effect is relevant." Laird C. Kirkpatrick, *Oregon Evidence* § 801.01[3][d][iii]4, Art VIII (4th ed 2002); *see State v. Thomas*, 167 Or App 80, 83-84, 1 P3d 1058 (2000) (evidence that person told someone in defendant's presence that bike was not stolen before giving bike to the defendant was not hearsay when offered to show that the defendant believed that bike was not stolen). Because the letter was offered to show that, based on her attorney's advice, petitioner believed that the trust would save estate taxes and that belief was relevant to establish that she made a mistake of law in creating the trust, the trial court did not err by admitting it into evidence over beneficiaries' hearsay objection.

■     We turn to beneficiaries' first assignment of error, in which they assert that the trial court erred by rescinding the trust. The central premise of their argument is that an irrevocable trust cannot be rescinded by its trustor on the basis of a mistake of law. Petitioner counters that the trial court had authority to rescind the trust under both a statute, *former* ORS 128.135(2)(d),[3] and general equitable principles.

---

[3] The statutes in ORS chapter 128 that are referred to in this opinion, including *former* ORS 128.135, are the 2003 versions of those statutes. Each of them was repealed by Oregon Laws 2005, chapter 348, section 128. In the same session, the legislature enacted the Oregon Uniform Trust Code, ORS chapter 130. Or Laws 2005, ch 348. The quoted provisions of ORS chapter 128, rather then the provisions of the Uniform Trust Code, apply to this case. *See* ORS 130.910(1)(b) ("ORS chapter 130 does not apply to judicial, administrative and other proceedings concerning trusts commenced before January 1, 2006.").

Although petitioner relied on both sources of authority before the trial court, that court granted rescission without specifying the legal basis for its decision.

We begin our analysis with petitioner's statutory argument. *Former* ORS 128.135(2) provided, in part:

> "Any beneficiary of a trust * * * may petition the circuit court * * * for the purpose of any of the following:
>
> "* * * * *
>
> "(d)  Making any modification of the trust that the parties could make by agreement under the provisions of ORS 128.177."

*Former* ORS 128.177(1)(d), in turn, authorized agreements to "[m]odify[ ] the trust instrument, including extending or reducing the period of the trust's operation, if the modification is not inconsistent with any dominant purpose or objective of the trust[.]" Petitioner reasons that if she could seek a modification of the trust to reduce the period of its operation, then she also could seek to reduce that period to nil, essentially terminating the trust immediately. Beneficiaries counter that petitioner's theory is at odds with the plain language of *former* ORS 128.135(2), which used the word "modif[y]," not "terminate." As explained below, we agree with beneficiaries.

Following the template of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), we first examine the statutory text in context. We give common words, such as "modification," their plain, natural and ordinary meaning. *Id.* at 611. In common usage, "modification" and "termination" have different meanings. *See Webster's Third New Int'l Dictionary* 1452, 2359 (unabridged ed 2002) (defining "modification," in part, as "the act or action of changing something without fundamentally altering it" and defining "termination," in part, as "end in time or existence"). Moreover, the statutory context also suggests that the legislature understood the two words to have different meanings. *Former* ORS 128.009(5) conferred on a trustee the power to "*terminate* the trust and distribute the trust property" under certain circumstances.[4] (Emphasis added.) The use of the

---

[4] The relevant language in *former* ORS 128.009 was enacted in 1981. Or Laws 1981, ch 915, § 1. *Former* ORS 128.177(1)(d), using the word "modif[y]," was enacted in 1993. Or Laws 1993, ch 222, § 2.

word "terminate" in that statute indicates that the legislature knows the difference between termination and modification of a trust. Furthermore, the terms "termination" and "rescission" themselves have different legal meanings. Rescission disaffirms a trust, whereas termination is normally prospective in effect and preserves certain legal remedies for breach. *See Edwards v. Wilcoxen*, 278 Or 91, 562 P2d 1207 (1977) (rescission disaffirms an instrument); *see also Paul & Backer Co. v. Newman*, 252 Or 66, 69, 448 P2d 511 (1968) ("termination" differs from "rescission" in that the former preserves the remedy of damages for breach, whereas the latter does not). Because the authority to modify a trust does not, under any reasonable construction, necessarily include the authority to rescind it, *former* ORS 128.135(2) did not authorize the trial court to rescind the trust.

■ We next consider beneficiaries' argument that the trial court did not have authority to rescind the trust based on general equitable principles. In support of that argument, beneficiaries rely, in part, on this court's decision in *Fleenor v. Williamson*, 171 Or App 599, 17 P3d 520 (2000). In *Fleenor*, the petitioner disclaimed his interest in a decedent's estate in accordance with the Uniform Disclaimer Act, *former* ORS 112.650 to 112.667 (1999),[5] in reliance on an attorney's incorrect advice that the disclaimer would transfer the petitioner's interest to his severely disabled brother. *Fleenor*, 171 Or App at 601. Because there was no preexisting common law of disclaimers and the disclaimer statutes did not provide for revocation, we reasoned that "equitable principles" could not be used to vary the comprehensive statutory scheme. *Id.* at 606-07. Accordingly, we concluded that the disclaimer could not be rescinded based upon the asserted mistake. *Id.* at 608. This case, however, is distinguishable. Here, the statutory scheme clearly preserved preexisting equitable remedies. *Former* ORS 128.175 provided that "[t]he remedies provided by ORS 128.135 and ORS 128.145 are cumulative and do not limit or abrogate any inherent power of a court with jurisdiction to grant equitable remedies[.]" *See also In re Harrell*, 104 Or App 332, 335-36, 801 P2d 852 (1990), *rev den*, 311 Or 166

---

[5] ORS 112.650 has since been repealed. Or Laws 2001, ch 245, § 19.

(1991) (noting that *former* ORS 128.175 preserved common-law remedies for modifying a trust). Accordingly, the holding of *Fleenor* does not assist beneficiaries.

■ Beneficiaries nonetheless rely on *dictum* in *Fleenor* in which we said that "we can find no Oregon case * * * that has allowed equitable relief where the mistake of law was unilateral." 171 Or App at 608 n 11. Beneficiaries correctly observe that petitioner's mistake in this case was unilateral. The difficulty with applying the *dictum* from *Fleenor* here is that the creation of a trust, unlike a bilateral contract, generally is by its nature a unilateral act. As petitioner notes, "[w]here two parties are involved, and a particular agreement has been bargained for, it makes sense to allow one party to rescind only where a mistake was mutual or induced by" fraud or other inequitable conduct.[6] Where, however, a trust was gratuitously created and there is no evidence of detrimental reliance on the part of a beneficiary, it makes little sense to deny rescission merely because the trustor's mistake was unilateral and was not induced by inequitable conduct on the part of the beneficiary. *See Restatement (Third) of Trusts* § 12 comment c (2003) ("Where no consideration is paid for the creation of the trust, it is sufficient to show that the settlor was induced by mistake to create the trust, although neither the trustee nor the beneficiary shared in the mistake or had reason to know of it.").[7] Accordingly, we do not follow the quoted *dictum* from *Fleenor*.

Beneficiaries also rely on *Stipe* for the proposition that irrevocable trusts cannot be rescinded under general

---

[6] In the context of a bilateral contract, a unilateral mistake will justify rescission only if the mistake was induced by the other party's inequitable conduct. *Jensen v. Miller*, 280 Or 225, 228-29, 570 P2d 375 (1977).

[7] Oregon courts frequently look to the *Restatements of Torts* to provide guidance on questions of law not well developed in our jurisprudence. *See, e.g., Morrow v. II Morrow, Inc.*, 139 Or App 212, 218, 911 P2d 964, *rev den*, 323 Or 153 (1996) (guidance from *Restatement of Torts* on defamatory torts); *Wayt v. Buerkel*, 128 Or App 222, 231, 875 P2d 499, *adh'd to as modified on recons*, 129 Or App 119, 816 P2d 868 (1994) ("The *Restatement Property* provides practical, common sense guidance for determining whether there is an intent to create an implied easement."); *Hollen v. Fitzwater*, 125 Or App 288, 292, 865 P2d 1298 (1993), *rev den*, 319 Or 80 (1994) ("[Oregon courts] have at various times turned to treatises, law review articles, cases from other jurisdictions and the *Restatement of Restitution* for help in defining the doctrine [of constructive trusts] and for guidance in applying it to particular cases.").

equitable principles. In *Stipe*, a trustor declared that certain shares of stock were held in trust for his children's benefit, and he then transferred the shares to the trustee. 208 Or at 257, 259. One and one-half years later, the trustee returned the shares to the trustor. *Id.* at 259. After the trustor died, his personal representative argued that the trust was revocable and that the trustor had revoked it by recovering the stock. *Id.* at 260-61. The court disagreed, concluding that a trustor cannot "revoke a trust without the consent of the beneficiaries in the absence of a reserved power authorizing such action." *Id.* at 268. The court "adopt[ed] with approval" the following statement:

> " 'If a trust has been created, it results in the vesting of property rights in the cestuis with regard to the subject-matter. If these property rights were absolute and unconditional, they cannot be taken from their owners without action on the part of such owners, by way of surrender or conveyance. The creator of those property rights, whether for a consideration or voluntarily, cannot resume his former position as owner merely because of a change of mind or a feeling that he has unwisely given or conveyed for a consideration.' "

*Id.* (quoting George Bogert, 4 *The Law of Trusts and Trustees* § 993, 429-30 (1948)). According to beneficiaries, *Stipe* controls here and, because petitioner did not reserve a power to revoke the trust but, rather, expressly made it irrevocable, she cannot rescind it because of a mistake.

Again, we disagree. The issue in *Stipe* was whether a trustor may unilaterally revoke an irrevocable trust without legal or equitable grounds to do so; by contrast, the question here is whether a trustor may, based on the equitable ground of mistake, seek judicial rescission of an irrevocable trust. Indeed, the treatise that the *Stipe* court cited with approval recognized that those circumstances are distinguishable and that a trust that was created by mistake can be rescinded. Bogert, 4 *Trusts and Trustees* § 993 at 435 ("A distinction should be drawn between revocation or modification by act of the settlor alone on the one hand, and a change in the terms of the trust or a destruction thereof by action of the court on the application of the settlor or the cestuis."); *see also id.* § 992 at 427 (stating that "a trust may be terminated where it was

created by mistake"). Accordingly, *Stipe* likewise does not assist beneficiaries.

Beneficiaries also rely on *Harrell*. In that case, a life-income beneficiary petitioned for modification of a trust in order to protect the interests of her disabled son, a remainder beneficiary who, the petitioner feared, might lose his eligibility for public assistance when he received his share of the trust. With the approval of the other beneficiaries, the petitioner sought to modify the trust to provide funds in a way that would not disqualify her son from receiving public assistance. *Harrell*, 104 Or App at 334-35. The petitioner relied on the *Restatement (Second) of Trusts*, and this court considered the *Restatement* without deciding whether it accurately reflected Oregon law. *Id.* at 336-37. We noted that the *Restatement* states that "[t]he court will not permit or direct the trustee to deviate from the terms of the trust merely because such deviation would be more advantageous to the beneficiaries than a compliance with such direction." *Id.* at 336 (quoting *Restatement (Second) of Trusts* § 167(1) comment b (1959)). We concluded that modification was impermissible, because the petitioner had sought it merely because it would have been more advantageous to the beneficiaries. *Id.* at 337.

*Harrell*, like *Stipe*, is inapposite. Here, there was no evidence that petitioner sought rescission "merely because of a change of mind or a feeling that [she] has unwisely given," *Stipe*, 208 Or at 268 (internal quotation marks omitted), or "merely because such deviation would be more advantageous to [her] than a compliance with [the trust's] direction." *Harrell*, 104 Or App at 336. Moreover, as in *Stipe*, the court in *Harrell* did not address the availability of the equitable remedy of rescission to correct a mistake of law that had led to the creation of a trust.

Having explained why the cases on which beneficiaries rely do not assist them here, we must determine whether, under applicable equitable principles,[8] an irrevocable trust can be rescinded for mistake at the instance of the

---

[8] Again, the statutory scheme for making changes to trusts did not supplant those principles. *See former* ORS 128.175.

trustor. Although no Oregon case is directly on point, we conclude that such authority does exist. The Supreme Court has permitted the voiding of a trust whose execution was induced by fraud or undue influence. In *Egr v. Egr et al.*, 170 Or 1, 131 P2d 198 (1942), the court determined that a trust was induced by undue influence and, therefore, was invalid. *Id.* at 32-33. There is ample reason to conclude that rescission is likewise available to remedy an actionable mistake. Mistake, like fraud, is a well-recognized equitable ground for rescission of a contract or other instrument. The *Restatement (Second) of Trusts* section 333 (1959) provides that "[a] trust can be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust can be rescinded or reformed." The explanatory material for section 333 further notes that, when a trust is created without payment of consideration, it can be rescinded for grounds including fraud, undue influence, or mistake. *Id.* at comment a; *see also Restatement (Third) of Trusts* § 62 and comment a (2003) (same). The *Restatement (Second) of Property (Donative Transfers)* § 34.7 and comment d (1992) likewise indicate that a donor may be able to set aside a donative transfer induced by mistake.[9] Those statements of principle by the cited authorities are persuasive and we adopt them. Accordingly, we conclude that, if she proved the necessary elements, petitioner was entitled to rescind the trust on the ground of mistake.

To obtain rescission of an instrument for mistake, a plaintiff must establish by clear and convincing evidence that

---

[9] Our conclusion also is consistent with decisions from other jurisdictions. *See duPont v. Southern Nat. Bank of Houston, Texas*, 575 F Supp 849 (SD Tex 1983), *aff'd in part, vac'd in part on other grounds*, 771 F2d 874 (5th Cir 1985), *cert den*, 475 US 1085 (1986) (trust created based on mistaken belief as to tax consequences can be rescinded where tax effect is the sole reason for creation of the trust, the tax purpose is frustrated, there is clear and convincing evidence that the trustor would not have created the trust but for the mistake, and the trustor acts immediately on learning of the mistake); *Berger v. United States*, 487 F Supp 49 (WD PA 1980) (transfer into trust could be revoked where grantor proved by clear and convincing evidence that he mistakenly believed at time of trust creation that trust was necessary to comply with employment policy); *Walton v. Bank of California, National Association*, 32 Cal Rptr 856, 868-69, 218 Cal App 2d 527, 545-46, (1963) (remedy of rescission is available to a trustor where a trust was created solely or principally for a tax purpose and the trustor was mistaken as to the tax consequences of the trust); *see also* L.S. Tellier, Annotation, *Cancellation of Irrevocable Inter Vivos Trust on Ground of Mistake or Misunderstanding*, 59 ALR2d 1229 (1958).

he or she made a mistake that was so fundamental that it frustrated the purpose of the instrument, and the mistake must have existed when the instrument was created. *Lesher v. Strid*, 165 Or App 34, 41-42, 996 P2d 988 (2000). In addition, the mistaken party must prove by the same quantum of proof that he or she was not "guilty of gross negligence in making the mistake." *Gardner v. Meiling*, 280 Or 665, 675, 572 P2d 1012 (1977); *Jensen v. Miller*, 280 Or 225, 230, 570 P2d 375 (1977). Finally, the mistaken party must seek rescission promptly after discovering the grounds for rescission. *Gearhart v. Goehner*, 74 Or App 95, 101, 701 P2d 461, *rev den*, 300 Or 332 (1985).[10]

■　　On *de novo* review, we find that petitioner established all necessary elements of her claim by clear and convincing evidence. First, it is undisputed that estate tax avoidance was petitioner's sole purpose for creating the trust. Second, the trust did not result in tax savings and, thus, did not serve its intended purpose. Third, petitioner was justified in relying on her attorney's advice that an irrevocable trust would serve that purpose. That is, she was not grossly negligent in making the mistake. Fourth, after petitioner learned of her mistake, she promptly sought legal counsel and attempted to have the trust rescinded by agreement of the beneficiaries. When that effort failed, she brought this action for rescission. It follows that the trial court did not err in entering a judgment rescinding the trust.

　　Affirmed.

---

[10] We note that this case presents no issue of detrimental reliance by the beneficiaries of the trust, and we do not address whether and how such reliance might affect the analysis of other cases.