Argued and submitted April 5, 2006, affirmed September 12, 2007

In the Matter of the Conservatorship of
Helen A. Haley.

Tamera HALEY,
*Appellant,*

*v.*

Helen A. HALEY,
Anna Marie Haley, Marilyn Horrocks,
Marlene Stephenson, and Sharnel Korala,
*Respondents.*

P031027; A125654

168 P3d 305

Ridgway K. Foley argued the cause for appellant. With him on the opening brief were Greene & Markley, P.C., and Mari Redman Ives and Redman Law Firm. With him on the reply brief were Greene & Markley, P.C., and Mari Redman Ives, James E. Redman, and Redman Law Firm.

Roger P. Mundorff argued the cause for respondent Helen A. Haley. With him on the brief was Mundorff & Kovac.

Michael D. McNichols argued the cause for respondents Anna Marie Haley, Marilyn Horrocks, and Marlene Stephenson. With him on the brief was Steven M. Cyr.

Sharnel Korala Mesirow waived appearance for respondent Sharnel Korala.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

ORTEGA, J.

---

* Landau, J., *vice* Ceniceros, S. J.

## ORTEGA, J.

Appellant Tamera Haley challenges the validity of a trial court order containing the terms of an agreement between herself and other family members with an interest in a family trust.[1] The agreement was reached in the context of a hearing on objections to a petition to appoint a conservator for Tamera's[2] mother, Helen Haley. The petition was filed by Helen, and the objections were filed by Tamera's sisters, Anna Marie Haley, Marilyn Horrocks, and Marlene Stephenson (the sisters). The hearing evolved into an unrecorded settlement conference, at the end of which the terms of the agreement were read into the record and memorialized in the order at issue.

On appeal, Tamera contends that the order is invalid, because the court lacked personal jurisdiction over her and because, at least to the extent that it imposes any obligation on her, the order failed to accord her the essential elements of due process. Helen agrees with Tamera regarding personal jurisdiction and additionally asserts that the trial court lacked subject matter jurisdiction to grant relief beyond what was prayed for in the conservatorship petition. Reviewing those challenges for errors of law, *Magar v. City of Portland*, 179 Or App 104, 106, 39 P3d 234 (2002), we affirm.

Unless otherwise indicated, the following facts and procedural history are undisputed. Tamera and the sisters are the daughters of Helen and Duane Haley. In 1991 and 1995, the bulk of the assets of Helen and Duane were transferred into the "Haley Irrevocable Trust." The trust named all four daughters as cotrustees and as beneficiaries.[3]

Some time after Duane's death, a dispute arose over control of the trust's assets. After unsuccessful attempts to

---

[1] The order is appealable under ORS 19.205(5). Respondent Sharnel Korala was named as trustee. She withdrew as trustee and did not participate in this appeal.

[2] Because this case involves a number of family members with the same last name, we refer to some parties by their first names in order to avoid confusion.

[3] Both Tamera and Helen dispute the validity of the trust. However, that issue is not before us, and we make no determination as to the trust's validity.

settle that dispute, Tamera's attorney sent the following letter to the attorney for one of the sisters:

> "We are not interested in the settlement terms you have proposed * * *.
>
> "* * * * *
>
> "We believe [Tamera and] the sisters are too far apart to resolve this and therefore, have determined that [Helen] and her attorney will have the better hope of resolving the problem. Therefore, please direct any further correspondence to [Helen's] attorney * * *."

A month after that letter, Helen filed a petition for appointment of a conservator. In the petition, she stated that she "desire[d] the appointment of [a] conservator to manage her finances and to help resolve a dispute which has arisen between herself and her children over the control of her assets." The only mention of the trust is the statement that "there is a dispute over whether [Helen's] residence and other assets are subject to a valid trust * * *." The petition sought an order granting the following relief:

> "(a)   Appointing * * * [a] conservator for Helen * * *.
>
> "(b)   Setting the bond of conservator at $50,000.
>
> "(c)   Directing that letters of conservatorship issue to [the conservator] upon filing and approval of his conservator's bond.
>
> "(d)   Directing that the real property of [Helen] * * * be frozen and not * * * be encumbered or sold without prior court order."

All four daughters received notice of the petition. The notice outlined the steps for filing objections or a request for notice and stated that "[u]nless you take these steps, you will receive no further copies of the filings in this case." Two of the sisters filed objections claiming that the irrevocable trust, not Helen, controlled the assets. The third sister requested copies of future filings. Tamera did not object to the petition or request notice. The trial court scheduled a hearing, and notice of that hearing apparently went to the sisters, but not to Tamera or her attorney.

Helen then filed a motion to continue and request for a settlement conference. The court approved the request, which was served on the sisters, but not Tamera or her lawyer. However, Tamera was aware of the proceeding because she drove Helen to the courthouse that day. As a result, Helen and her attorney, the sisters and their attorneys, and Tamera were all present at the settlement conference.

At the conclusion of an unrecorded, in-chambers settlement conference with the judge, Helen's attorney recited into the record the terms of an agreement. Those terms included that the conservatorship petition would be withdrawn, that a number of changes would be made regarding the trust,[4] and that Tamera would submit an accounting of deposits to, and withdrawals and payments from, Helen's bank accounts. Helen and the sisters, through their attorneys, indicated their agreement with the terms as recited.

Tamera's assent to the agreement was more limited. The judge asked Tamera on the record whether she could submit an accounting within 10 days, and she replied, "I'll go down. Yeah, I can do it today." Regarding other terms of the agreement, the following colloquy ensued:

"THE COURT:   * * * [A]re you in agreement with those things cited?

"[TAMERA]:   I just have a concern about the majority rules on my mom's house. I thought we agreed that * * * if mom wanted to sell it, [the new trustee would] make that decision * * *.

"THE COURT:   We did talk about that concept.

"* * * * *

"[TAMERA]:   Is it still in the hands [of] the majority rules?

"THE COURT:   That's how it's been recited.

"* * * * *

---

[4] Among those changes was the naming of a successor trustee, who was instructed on a number of matters regarding trust income and other assets.

"[HELEN'S ATTORNEY]: * * * I think these are issues that we don't know whether there's—we're just speculating * * *.

"* * * * *

"So hopefully, we'll be able to reach some agreement in the future that will accommodate [Helen] somehow.

"* * * * *

"THE COURT:  Great, [are] we in agreement?

"[HELEN'S ATTORNEY]: Your Honor, I'll put together a written document for everyone's review.

"THE COURT:  Okay. We'll be in recess."

Tamera, through her attorneys, later filed an objection to the proposed stipulated order and a motion for rehearing and then a motion to quash, both on the ground that the court lacked personal jurisdiction over her because neither she nor her attorney had received notice of the settlement conference. Both motions were denied. The trial court issued a letter opinion that addressed Tamera's participation at the settlement conference, concluding,

"At no time did Tamera * * * request that the matter be continued so that she could be represented by counsel. On the contrary, after inquiry by the court it was understood that [Tamera] was appearing on her own behalf and did not wish to have her attorney involved."

According to the trial court, the resolution reached at the settlement conference "was agreed to by all parties, including Tamera * * *." Accordingly, the trial court issued an order reciting the terms of the settlement.

Tamera here challenges the entire order for want of personal jurisdiction over her and, insofar as the order is directed at her, for failing to accord her the essential elements of due process. Helen agrees and additionally contends that the trial court lacked subject matter jurisdiction over the trust. We affirm.

■    We begin with Helen's argument regarding subject matter jurisdiction. The order names a successor trustee and instructs that trustee on a number of matters regarding the

trust, matters that were not addressed in the original peti-
tion. That petition, which was not amended, asked the court
to appoint a conservator, set a conservatorship bond, direct
that letters of conservatorship issue, and direct that certain
real property be frozen; it did not mention the trust at all,
apart from a reference to "a dispute over whether [Helen's]
residence and other assets are subject to a valid trust." The
objections basically alleged that a conservatorship was
improper because all the assets belonged to the trust. Helen
contends that, because matters involving alteration of the
trust are outside the scope of the pleadings that were before
the court, the court lacked subject matter jurisdiction over
the trust. We disagree.

■       Subject matter jurisdiction exists when a court
has authority to adjudicate the general subject involved.
*Generaux v. Dobyns*, 205 Or App 183, 187, 134 P3d 983
(2006). Under the Oregon Constitution, jurisdiction is
invested in the circuit courts unless a statute or rule of law
states otherwise. Or Const, Art VII (Original), § 9; Or Const,
Art VII (Amended), § 2; *Generaux*, 205 Or App at 187. By
statute, circuit courts have the authority to deal with trusts.
*See former* ORS 128.135 (2003), *repealed by* Or Laws 2005,
ch 348, § 128; ORS 130.060. Accordingly, the trial court had
subject matter jurisdiction over the trust.

        As support for her argument regarding subject mat-
ter jurisdiction, Helen cites the rule that, ordinarily, a court
does not have authority to grant relief beyond what was
pleaded. *Cheryl Wilcox Property Management v. Appel*, 110
Or App 90, 94, 821 P2d 428 (1991) ("Ordinarily, a judgment
must be responsive to the issues framed by the pleadings,
and a trial court usually has no authority to render a decision
on an issue not presented for determination."). However,
issues outside the pleadings commonly may be addressed in a
settlement agreement or tried by consent of the parties. *See
generally* ORCP 23 B ("When issues not raised by the plead-
ings are tried by express or implied consent of the parties,
they shall be treated in all respects as if they had been raised
in the pleadings."). Here, the order purports to recite an
agreement of the parties.[5] The pleadings do not limit the

---

[5] We are not faced with a challenge to whether Tamera actually entered into
that agreement, but only to whether the court had personal jurisdiction over her
and afforded her due process.

court's subject matter jurisdiction. Accordingly, Helen's subject matter jurisdiction arguments do not present a basis for reversing the order at issue.

■      We proceed to address Tamera's arguments regarding personal jurisdiction and due process. We conclude that the court had personal jurisdiction over Tamera and that she was afforded adequate notice and opportunity to be heard, as required by due process.

We begin with personal jurisdiction. ORCP 4 A(2) provides that "[a] court of this state having jurisdiction of the subject matter has jurisdiction over a party served in an action pursuant to [ORCP] 7" who is "a natural person domiciled within this state." Tamera was served with notice of the protective proceeding itself, even though she was not served with notice of the hearing on the sisters' objections to the petition seeking appointment of a conservator. ORS chapter 125[6] governs protective proceedings and sets forth the applicable jurisdictional notice requirements. According to ORS 125.060(2)(b), the "adult children of the respondent" (here, the respondent was Helen, who was also the petitioner) must be given notice that a petition has been filed. The content of the notice is governed by ORS 125.070. Tamera received notice that complied with the statutory requirements that apply in this case. *See* ORCP 1 A (providing that the Oregon Rules of Civil Procedure "govern procedure and practice in all circuit courts of this state * * * except where a different procedure is specified by statute or rule"). Tamera did not receive notice of the hearing on objections to the petition— but such notice was not required under the statute. As relevant here, notice of such a hearing need be given only to the protected person, to "[a]ny person who has filed a request for notice in the proceedings" (which Tamera had not), and to any fiduciary who has been appointed for the protected person. ORS 125.060(3) (setting forth those to whom notice must be provided under various circumstances); ORS 125.075(3) (providing that if objections are presented to the petition, notice shall be given to "all persons entitled to notice under ORS 125.060(3)"). Because Tamera received the only notice

---

[6] The 2005 Legislative Assembly amended several portions of ORS chapter 125. However, because those amendments do not affect our review, we cite the 2005 version of the chapter.

required by statute and the other requirements of ORCP 4 A were met, the court had personal jurisdiction over her in the context of the proceeding at issue.

Tamera contends that one becomes subject to the personal jurisdiction of the court only on filing and serving objections to the petition pursuant to ORS 125.075 or by filing a request for notice in the proceedings pursuant to ORS 125.060(3)(b), (4), and (5). However, she cites no support for that proposition, and we have found none. Rather, Tamera received the notice required for the court to acquire jurisdiction over her when she was served with statutory notice of the proceedings under ORS 125.060(2)(b). We reject the suggestion that the court did not acquire personal jurisdiction over Tamera until she elected to appear and participate in the proceedings.

Finally, Tamera was afforded due process with respect to the aspects of the order that required her to submit an accounting. The Due Process Clause of the Fourteenth Amendment to the federal constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." The clause requires that a person be given notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 US 319, 348, 96 S Ct 893, 47 L Ed 2d 18 (1976). When analyzing a due process claim, we must first decide if there has been a deprivation of a liberty or property interest; if so, we must decide what process is due. *Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007).

Here, even if we were to assume that the requirement that Tamera submit an accounting deprived her of a liberty or property interest (and Tamera has not explained how that is so), Tamera received due process with respect to that aspect of the order. She had the opportunity to object to the petition and to receive further notice regarding the proceeding (both opportunities that she declined), and although the statute did not entitle her to notice of the hearing on objections, she was actually present and had an opportunity to object to the requirement that she provide an accounting.

In fact, the record establishes that she agreed to that portion of the order.[7]

Affirmed.

---

[7] ORS 125.025(1) provides that a trial court having jurisdiction over a protective proceeding may act on its own authority "at any time and in any manner it deems appropriate to determine the condition and welfare of the respondent or protected person * * *." We do not assume that due process required that Tamera receive notice and an opportunity to be heard before being ordered to provide an accounting and need not decide that question here, given that Tamera received actual notice and agreed to that portion of the order.