**130 Nev., Advance Opinion 63**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE IRREVOCABLE TRUST AGREEMENT OF 1979. | No. 62160 |

CHARRON C. MONZO, AS BENEFICIARY OF THE CHARRON C. MONZO REAL ESTATE TRUST AGREEMENT OF 2005,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE GLORIA STURMAN, DISTRICT JUDGE,
Respondents,
and
DAISY MONZO,
Real Party in Interest.

**FILED**

**AUG 07 2014**

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order granting partial summary judgment.

*Petition granted.*

Bailus Cook & Kelesis, Ltd., and Marc P. Cook and Kathleen T. Janssen, Las Vegas,
for Petitioner.

Snell & Wilmer, LLP, and Patrick G. Byrne, Las Vegas; Gordon Silver and Bradley J. Richardson and Puneet K. Garg, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, HARDESTY, J.:

Real party in interest Daisy Monzo executed a deed gifting a condominium that she owned to an irrevocable trust for the benefit of her daughter, petitioner Charron C. Monzo. Daisy later rescinded that transfer based on alleged unilateral mistakes in the execution of the deed conveying the property to the trust. We are asked to determine whether unilateral mistakes, if proven, will allow the donor to rescind or reform an errant gift. We hold that a donor may obtain relief from an erroneous gift if he or she proves by clear and convincing evidence that the donor's intent was mistaken and was not in accord with the donative transfer. Further, remedies available to correct such mistakes, which include rescission or reformation of the deed transferring the property, depend on the nature of the unilateral mistake in question.

### FACTS AND PROCEDURAL HISTORY

Daisy and her three adult daughters, Charron, Charlene, and Michelle, established three irrevocable inter vivos real estate trusts, each benefiting a daughter, and into each of which a one-third interest in properties located in Arizona and New York was transferred. Daisy was the sole original trustee of each of the trusts. Michelle lived in the Arizona property and Charlene lived in the New York property. These properties were each valued at approximately $500,000. Charron lived with Daisy in a Las Vegas condominium owned by Daisy that is valued at over $2 million, but that had not been transferred into any of the trusts.

When Charron and Daisy considered transferring the Las Vegas condo into a trust for Charron's use, Charron introduced Daisy to

SUPREME COURT
OF
NEVADA

(O) 1947A

2

Las Vegas attorney Michael Rasmussen who met with them several times about the proposed transfer. During these meetings, they discussed whether Daisy would retain control over the Las Vegas condo if it was transferred into a trust, whether Daisy needed to transfer the condo to avoid having it escheat to the state upon her death, and how the condo should be transferred and titled if it were to be placed into a trust. Despite the ongoing consultations with Rasmussen over the transfer of the condo, Daisy never provided Rasmussen with any of her prior estate planning documents or authorized him to contact her other attorneys.

Rasmussen prepared a deed, which Daisy signed, gifting a 100-percent interest in the Las Vegas condo from Daisy to Charron's trust. But Rasmussen later learned that, when transferring real property into her family trusts, Daisy typically transferred a one-third interest in the subject properties to each daughter's trust, rather than the 100-percent interest in the condo that she had transferred to Charron's trust. Rasmussen prepared a correction deed to rectify this situation, but Daisy refused to sign that deed. Instead, three months after Daisy signed the deed transferring the Las Vegas condo into Charron's trust, Daisy signed another deed, prepared by a different attorney, transferring the condo back into her own name.

After Daisy rescinded the prior gift, Charron filed a petition in the district court seeking accountings of the various family trusts and an order requiring Daisy to transfer the Las Vegas condo back to Charron's trust. The accounting actions were consolidated and the Las Vegas condo issue was addressed separately. Daisy filed counterclaims against Charron based on the original transfer of the Las Vegas condo into Charron's trust for, among other things, fraudulent misrepresentation,

elder abuse, breach of contract, conversion, undue influence, and mistake. Daisy also moved the district court for partial summary judgment, seeking rescission of the initial gift deed based on at least three mistakes that Daisy allegedly made in transferring the condo into Charron's trust. First, Daisy asserted that she mistakenly believed that the deed would transfer the condo into a trust that she controlled while granting her estate planning flexibility. Second, she argued that she mistakenly thought that transferring the property was necessary to avoid having it escheat to the state upon her death. And third, she contended that she mistakenly believed that, consistent with prior estate planning practices, the deed would transfer a one-third interest in the property to each daughter's trust, rather than conveying the full interest to Charron's trust. Charron filed a countermotion for partial summary judgment on Daisy's counterclaims and, in the alternative, for reformation of the deed transferring the condo into Charron's trust, if the district court ultimately determined that Daisy mistakenly transferred a 100-percent interest in the condo into Charron's trust, instead of a one-third interest into each daughter's trust.

Following briefing and a hearing on these motions, the district court denied Charron's countermotions and entered partial summary judgment in Daisy's favor, concluding that Daisy made unilateral mistakes in executing the gift deed and rescinding the initial deed. The district court purported to apply Nevada's general unilateral mistake law, together with gift law from other jurisdictions, in granting summary judgment. But although the district court held that Daisy's execution of the deed transferring title to the condo into the trust was based on unilateral mistakes, it made no findings as to what specific mistakes

affected the execution of the deed or what Daisy's intent was when she made the donative transfer. Charron then filed this original writ petition challenging the district court's partial summary judgment order.

## DISCUSSION

In her petition, Charron contends that summary judgment was improperly granted in Daisy's favor on the unilateral mistake and rescission issues because questions of material fact remained as to Daisy's intent in transferring a 100-percent interest in the Las Vegas condo into Charron's trust. Charron contends that the summary judgment evidence demonstrated that Daisy did not make any mistake in the transfer, but alternatively asserts that if a mistake was made, this court should clarify the proper remedy to address mistakes in a donative transfer. In response, Daisy argues that no genuine issues of material fact remained, as the evidence demonstrated that she made unilateral mistakes in executing the deed transferring the property into Charron's trust, and that she, as the donor, was entitled to elect rescission to correct these mistakes. The parties and the district court all recognize that this court has not addressed unilateral mistake in the context of a donative transfer.

### Standard of review

Although this court generally declines to exercise its discretion to consider writ petitions challenging district court orders granting or denying summary judgment, *Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997), we nevertheless will exercise our discretion to consider such petitions when "an important issue of law needs clarification and considerations of sound judicial economy and administration militate in favor of granting the petition." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197-98, 179 P.3d

556, 559 (2008). We have not previously addressed whether a donor making an inter vivos gift or donative transfer may rely on his or her unilateral mistake in making the gift to obtain relief from the property transfer. As this original writ proceeding provides us with the opportunity to address and clarify this important issue of donative transfer law, we exercise our discretion to consider this matter on the merits. *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).

This court typically reviews a petition for a writ of mandamus to determine whether the district court engaged in an arbitrary or capricious exercise of discretion, and we review de novo issues of law presented in the context of such an extraordinary writ proceeding.[1] *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 558-59.

*Mutual and unilateral mistake in the contract context do not apply to donative transfers*

In granting rescission of the transfer deed, the district court held that Daisy's transfer of the property into Charron's trust was affected by unilateral mistake. Charron's arguments in her original writ petition, however, initially focus on whether a mutual mistake occurred in this transfer, although she also subsequently addressed the application of unilateral mistake to this dispute in responding to Daisy's assertion that the transfer of the property was, as the district court concluded, based on unilateral mistakes.

---

[1]Because mandamus, rather than prohibition, constitutes the proper vehicle for challenging the rulings at issue here, we deny Charron's alternative request for a writ of prohibition. *See* NRS 34.320 (noting that prohibition relief is available to address proceedings in excess of a tribunal's jurisdiction).

*Contract-based mistake*

We have previously held, in the contract context, that a mutual mistake may provide a basis for relief from a contract. *Gramanz v. Gramanz*, 113 Nev. 1, 8, 930 P.2d 753, 758 (1997). A "[m]utual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain." *Id.* (internal quotation omitted). But as other courts have concluded, mutual mistake is entirely inapplicable in the gift context because a gift, by its very nature, is unilateral. This is because "[w]hen a deed is exchanged in a contractual relationship, both the grantor and grantee are obligated to perform in some type of fashion, which creates the opportunity for a mutual mistake to occur. Whereas, when a deed is given as a gift, the grantor is the only party with an obligation, and, thus, only a unilateral mistake is likely to occur." *Wright v. Sampson*, 830 N.E.2d 1022, 1027 (Ind. Ct. App. 2005).

This court has also recognized that the occurrence of unilateral mistakes may allow a party to a contract to obtain relief from that agreement. *Home Savers, Inc. v. United Sec. Co.*, 103 Nev. 357, 358-59, 741 P.2d 1355, 1356-57 (1987) (adopting Restatement (Second) of Contracts § 153 (1981)). A unilateral mistake occurs when one party makes a mistake as to a basic assumption of the contract, that party does not bear the risk of mistake, and the other party has reason to know of the mistake or caused it. *Id.* Although the district court in this case partially relied on this line of reasoning in making its decision, and Daisy likewise relies on this authority in responding to Charron's petition, contractual unilateral mistake is also inapplicable in the donative transfer context because, like contract-based mutual mistake, this concept is premised upon an agreement between two parties giving rise to mutual obligations

amongst the parties. *See Wright*, 830 N.E.2d at 1027. But in the gift context, it is only the grantor whose intent and acts matter. *See Twyford v. Huffaker*, 324 S.W.2d 403, 406 (Ky. Ct. App. 1958). Aside from the donee's acceptance or refusal of the gift, the donor is the only party available to bear the risk of mistake. *See id.* Whether a donee knew of or caused a mistake is likely irrelevant. *See id.*

*Donative transfer and trust law*

In Nevada, a valid inter vivos gift or donative transfer requires a donor's intent to voluntarily make a present transfer of property to a donee without consideration, the donor's actual or constructive delivery of the gift to the donee, and the donee's acceptance of the gift.[2] *Schmanski v. Schmanski*, 115 Nev. 247, 252, 984 P.2d 752, 756 (1999); *Edmonds v. Perry*, 62 Nev. 41, 61, 140 P.2d 566, 575 (1943); *Simpson v. Harris,* 21 Nev. 353, 362, 31 P. 1009, 1011 (1893); *see also* Restatement (Third) of Prop.: Wills & Other Donative Transfers § 6.1 (2003). Unless conditional, a gift becomes irrevocable once transferred to and accepted by the donee. *Simpson*, 21 Nev. at 362-63, 31 P. at 1011 (noting that a donor giving a gift may not reclaim or expect repayment for the gift). In this regard, Nevada's long-standing position on the issue is consistent with that of other jurisdictions that have also opined, in more recent decisions, that a gift becomes irrevocable once the transfer and

---

[2]Although the deed at issue here recited that the Las Vegas condo was given "for good and valuable consideration," the district court found that the Las Vegas condo was a gift to Charron's trust, and Charron does not challenge that determination in her writ petition. As a result, we do not consider the effect of this language on the nature of the transfer in this writ proceeding.

acceptance of that gift have occurred. *See Albinger v. Harris*, 48 P.3d 711, 719 (Mont. 2002) ("Such a gift, made without condition, becomes irrevocable upon acceptance."); *Cooper v. Smith*, 800 N.E.2d 372, 379 (Ohio Ct. App. 2003) ("Generally, a completed inter vivos gift is absolute and irrevocable."). Given the irrevocable nature of a gift, it is apparent that the donor cannot simply resort to self-help to undo the donative transfer, absent the donee's agreement to return or modify the gift.

As Charron points out, in the trust context, Nevada statutes place similar restrictions on the unwinding of transfers into irrevocable trusts like the one at issue here. In particular, NRS 163.560(1) provides that if a donor transfers property into a trust that is expressly irrevocable, that trust, and the donative transfer, "shall be irrevocable for all purposes." And NRS 163.050, which applies to trusts in general, requires a trustee to either obtain the consent of all trust beneficiaries or seek court approval before engaging in a self-interested transaction, such as transferring property from the trust into the trustee's name.

Considering these statutes in light of the situation presented here, once the donor transfers property into an irrevocable trust, of which the donor is also the trustee, Nevada's trust scheme restricts the donor/trustee's ability to resort to self-help to transfer trust property to himself or herself in an attempt to remedy perceived problems with the transfer. *See* NRS 163.050. Resort to such self-help remedies may also raise concerns surrounding the donor/trustee's possible breach of fiduciary duties to the trust beneficiaries. While Charron argues that these statutes prohibited Daisy's second transfer of the property out of the trust and back into her own name, the subsequent transfer of this property is not at issue here, as the district court has not addressed the effect of Daisy's actions in

this regard.[3]  Instead, the focus of this petition is limited to the district court's determination that unilateral mistake affected the initial transfer of the property into Charron's trust and its rescission of the transfer deed. Thus, the issues before us involve the applicability of unilateral mistake to the original donative transfer, what remedies are available if unilateral mistake does apply, and whether the district court properly granted partial summary judgment to Daisy and rescinded the initial transfer.

*Unilateral mistake in the donative transfer context*

Having examined our existing contract-based mistake law and gift law, it is apparent that Nevada's established law does not address the instant matter, and we therefore review extrajurisdictional approaches to this issue. In this regard, Charron's arguments before this court focus on whether genuine issues of material fact preclude partial summary judgment and whether reformation is a more appropriate remedy than rescission. Her arguments do not substantively address a donor's unilateral mistake in a donative transfer. Daisy, however, strenuously argues that a donor's unilateral mistakes in executing a donative transfer permits the donor to elect a remedy, at his or her discretion, to correct his or her mistakes in executing the donative transfer.

---

[3]We note that, in the absence of the donee's or a trust beneficiary's consent, the preferred method for a donor to seek relief for perceived problems with a donative transfer is to petition a district court for relief. We decline to further address Daisy's resort to self-help in this case, because that question is not before us. The impact, if any, of Daisy's resort to self-help through the second deed transferring the Las Vegas condo from the trust back into her own name remains to be determined, in the first instance, by the district court.

The vast majority of jurisdictions address this issue consistently with the modern Restatement approach, which allows a donor to obtain relief from a donative transfer based on unilateral mistake through reformation or rescission.[4] *See, e.g., Pullum v. Pullum*, 58 So. 3d 752, 757-58 (Ala. 2010); *Yano v. Yano*, 697 P.2d 1132, 1135-36 (Ariz. Ct. App. 1985); *Wright*, 830 N.E.2d at 1027-28; *Twyford*, 324 S.W.2d at 406; *Estate of Irvine v. Oaas*, 309 P.3d 986, 990-91 (Mont. 2013); *Generaux v. Dobyns*, 134 P.3d 983, 989-90 (Or. Ct. App. 2006). Under the Restatement approach, a donor whose gift is induced by a unilateral mistake, who mistakenly transfers something more than or different from the intended transfer, or who mistakenly makes a gift to someone other than the intended recipient, may pursue an action to remedy his or her unilateral mistake. Restatement (Third) of Restitution & Unjust Enrichment § 11 (2011). In such an action, the party advocating the mistake has the burden of proving the donor's intent and the alleged mistake by clear and convincing evidence. Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 & cmts. c, e & g (2003).

The Restatements identify two types of unilateral mistakes that may occur: invalidating mistakes and mistakes in the content of a document. Restatement (Third) of Restitution & Unjust Enrichment § 5

---

[4]A minority of courts have declined to grant relief from a donative transfer based on allegations of unilateral mistake absent fraud or inequitable conduct. *See, e.g., Willis v. Willis*, 722 S.E.2d 505, 507-08 (N.C. 2012) (holding that reformation is not available for unilateral mistakes not induced by fraud even in cases of a gift). This approach, however, is inconsistent with Nevada's general formulation of unilateral mistake, which is not limited to cases of fraud or inequitable conduct. *See generally Home Savers*, 103 Nev. at 358-59, 741 P.2d at 1356-57.

(2011); Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 (2003). An invalidating mistake occurs when "but for the mistake the transaction in question would not have taken place." Restatement (Third) of Restitution & Unjust Enrichment § 5(2)(a) (2011). "The donor's mistake must have induced the gift; it is not sufficient that the donor was mistaken about the relevant circumstances." *Id.* § 11 cmt. c. A mistake in the content of a document arises through either a mistake of expression or a mistake of inducement. Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 & cmt. i (2003). A mistake of expression occurs when a document misstates the donor's intention, fails to include a specific term that the donor intended to be included, or includes a term that was not intended. *Id.* A mistake of inducement occurs when a donor intentionally includes or omits a term, but the intent to include or omit the term was a product of mistake. *Id.* Whether a donor's mistake is characterized as a mistake of fact or law is irrelevant. Restatement (Third) of Restitution & Unjust Enrichment § 11 cmt. c (2011).

The Restatement affords the donor different remedies depending on the type of mistake.[5] Rescission is an appropriate remedy to address an invalidating mistake. Restatement (Third) of Restitution & Unjust Enrichment § 5(1) (2011); *see also Generaux*, 134 P.3d at 990. In contrast, reformation is an appropriate remedy to address mistakes in the

---

[5]The Restatement permits a party to seek other restitutionary remedies in addition to the equitable remedies of rescission and reformation. Restatement (Third) of Restitution & Unjust Enrichment § 11(1) (2011). Because neither party here seeks remedies other than rescission or reformation, we do not address other potential remedies at this time.

content of the document, where the donative transfer was intended but mistakes affected the expression of the transfer. Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 cmts. a, g & h (2003); *see also Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012); *Pullum*, 58 So. 3d at 757-60; *Estate of Irvine*, 309 P.3d at 990-91. The Restatements' discussion of when rescission or reformation may be appropriate is consistent with Nevada contractual law addressing remedies. *See Home Savers v. United Sec. Co.*, 103 Nev. 357, 358-59, 741 P.2d 1355, 1356 (1987) (permitting rescission for a mistake "as to a basic assumption on which" the contract was made (internal citations omitted)); *25 Corp. v. Eisenman Chem. Co.*, 101 Nev. 664, 672, 709 P.2d 164, 170 (1985) (stating that reformation is available to correct drafting mistakes in a contract to reflect the parties' true intentions).[6]

Based on our review of the relevant Restatement sections and extrajurisdictional decisions evaluating the Restatement approach to unilateral mistake in the donative transfer context, we conclude that the Restatement's position corresponds with Nevada's overall treatment of mistake and our application of the remedies of rescission and reformation in the contract realm. Accordingly, we join the majority of jurisdictions in recognizing that a donor's unilateral mistake in executing a donative transfer may allow a donor to obtain relief from that transfer if the mistake and the donor's intent are proven by clear and convincing

---

[6]In light of our adoption of the Restatement approach to donative transfers and the consistency of the Restatement remedies with Nevada's contractual remedies, we necessarily reject Daisy's assertion that, as the donor, she possesses the exclusive right to determine what remedy is applied.

evidence.[7] And depending on whether the unilateral mistake constitutes an invalidating mistake or a mistake in the content of the document, the donor may be entitled to rescission or reformation of the transfer. Having adopted this approach, we now examine whether the district court arbitrarily or capriciously exercised its discretion when determining that Daisy's execution of the transfer deed was affected by unilateral mistakes and whether no genuine issues of material fact remained.

*Genuine issues of fact remain as to Daisy's alleged intent and unilateral mistakes*

In the underlying case, Daisy moved for partial summary judgment and rescission on her unilateral mistake counterclaim, which the district court granted over Charron's opposition and competing motion for partial summary judgment. In reaching this conclusion, the district court found that Daisy made unilateral mistakes in executing the gift deed and that rescission of the deed transferring the property to Charron's trust was warranted. In her petition challenging the district court's determination, Charron argues that there were no mistakes in the execution of the transfer deed but that, if mistakes were made, reformation of the deed, rather than rescission, was the appropriate remedy. Daisy disagrees, asserting that her execution of the deed was based on several unilateral mistakes and that rescission was the correct remedy.

---

[7]While we phrase our opinion in terms of the donor obtaining relief, circumstances may exist where other interested parties, such as the donee, the intended donee, or the beneficiary, may also request relief for a donative transfer affected by mistake. Because that issue is not directly before us, we do not further address it here.

Under the Restatement approach adopted here today, the party advocating unilateral mistake as a basis for obtaining relief from a donative transfer (in this case Daisy, the donor/trustee) must prove his or her case by clear and convincing evidence. Restatement (Third) of Prop.: Wills & Other Donative Transfers § 12.1 & cmts. c, e & g (2003). And demonstrating unilateral mistakes in the execution or transfer of a gift depends on the donor's intent at the time of the donative transfer. *McClung v. Green*, 80 So. 3d 213, 216 (Ala. 2011) (examining the donors' intent to determine whether a mistake was made); *Generaux*, 134 P.3d at 990 ("[T]he mistake must have existed when the instrument was created."). Thus, unilateral mistakes cannot be said to have been made without first determining the donor's intent at the time when delivery and all other elements necessary to complete a donative transfer were completed. If the donor's intent is not in accord with the facts, then a mistake may have occurred warranting relief. Determining a donor's donative intent and beliefs is a question for the fact-finder, and the presence of ambiguity in a donor's intent in making a gift creates genuine issues of material fact that preclude summary judgment. *Anvui, L.L.C. v. G.L. Dragon, L.L.C.*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007); *Mullis v. Nev. Nat'l Bank*, 98 Nev. 510, 513, 654 P.2d 533, 535-36 (1982).

In this case, Daisy argues that she made three unilateral mistakes in transferring the condo into Charron's trust. First, even though she was sole trustee of the trust, she alleged that she mistakenly believed that she would retain control over the Las Vegas condo once it was transferred into trust. Second, she purported that she mistakenly thought that the transfer was necessary to avoid having the Las Vegas condo escheat to the state upon her death. And third, she asserted that

SUPREME COURT
OF
NEVADA

(O) 1947A

15

she mistakenly believed that the deed would transfer a one-third interest in the condo to each daughter's trust. The evidence presented regarding Daisy's intent and these alleged mistakes is also conflicting.

At various times in her deposition, Daisy testified that she did not have a problem with the transfer to Charron's trust, that she wanted the transfer to be one-third into each daughter's trust, and that she did not want to transfer the Las Vegas condo at all.[8] Rasmussuen testified in his deposition that he thoroughly reviewed the proposed transaction with Daisy, including whether she would retain control over the Las Vegas condo, whether it would escheat to the state, and that the entire interest in the condo would be transferred into Charron's trust. Rasmussen further testified that he believed that Daisy understood the ramifications of the donative transfer, that she was making her own decisions, and that she intended to transfer a 100-percent interest in the Las Vegas condo into Charron's trust. And although this transfer was inconsistent with Daisy's prior estate planning, Daisy expressly prohibited Rasmussen from contacting her other attorneys before she executed the transaction. Finally, while Charron appeared to concede in her deposition testimony that Daisy intended a one-third interest in the Las Vegas condo to be placed into each daughter's trust, rather than a 100-percent interest in

---

[8]While Daisy's counsel sought to dismiss this conflicting testimony as something to be expected from someone who is 86 years old, such conflicts, regardless of their basis, are inherently inappropriate for resolution through a summary judgment motion. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (recognizing that summary judgment is only appropriate if the pleadings and other evidence on file, viewed in the light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact remains in dispute and that the moving party is entitled to judgment as a matter of law).

SUPREME COURT
OF
NEVADA

(O) 1947A

16

Charron's trust, her testimony is conflicting in this regard, and she nonetheless testified that Daisy intended to make the donative transfer.

Given the conflicting testimony from Daisy, Charron, and Rasmussen, it is uncertain what Daisy's donative intent was at the time of the donative transfer. Because the donor's intent at the time of the transaction is determinative of whether unilateral mistakes affected the execution or transfer of the gift, *McClung*, 80 So. 3d at 216, genuine issues of fact necessarily remain as to whether unilateral mistakes affected Daisy's execution of the deed transferring the Las Vegas condo into Charron's trust, and thus, the district court was precluded from granting partial summary judgment. *Wood*, 121 Nev. at 729, 121 P.3d at 1029.

With regard to the issue of available remedies, however, even if Charron had conceded that Daisy intended the transfer, but made a mistake in the content of the deed by transferring 100 percent of the interest in the property to Charron, rather than one-third to each daughter, we would still decline to address the appropriate remedy for this mistake. In this regard, Daisy did not move for reformation and the ultimate remedy in this matter will depend on the Restatements' treatment of available remedies, as discussed above, for this or any other mistake that Daisy is found to have made and the remedies available for the parties' other causes of action, if they are also proven. Accordingly, it is inappropriate to discuss a remedy on extraordinary review of a partial summary judgment when conflicting testimony and other causes of action remain to be resolved.

For the reasons discussed above, we grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate the portion of its order granting Daisy's motion for

Supreme Court
of
Nevada

(O) 1947A

17

partial summary judgment and enter an order denying that motion. We do not disturb the remainder of the district court's order denying Charron's countermotions.[9]

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Douglas

_____, J.
Saitta

---

[9]Charron's writ petition primarily addressed the district court's grant of Daisy's motion for partial summary judgment, but also included a request for reformation of the deed transferring the Las Vegas condo into trust. As discussed herein, however, genuine issues of material fact remain concerning Daisy's intent that precludes summary judgment. We thus decline to disturb the portion of the district court's order denying Charron's countermotions.

In light of our resolution of this matter, we vacate the stay imposed by our March 26, 2013, order and clarified by our July 1, 2013, order.