GRAY *v.* GRAY.

5-2292                                344 S. W. 2d 329

Opinion delivered March 20, 1961

*D. B. Bartlett* and *Mark E. Woolsey*, for appellant.

*Edward H. Patterson* and *Robert J. White*, for appellee.

JIM JOHNSON, Associate Justice. This appeal involves title to an undivided one-sixth interest in a farm of approximately 620 acres located mainly in the Arkansas River bottom near the town of Hartman in Johnson County. This farm was a part of the estate of W. R. Gray, deceased, and because of its location it was known as the Hartman Farm.

Appellants, as plaintiffs in the trial court, filed their complaint against appellee as defendant alleging that in 1918 William R. Gray died intestate a resident of Johnson County seized and possessed of this farm and was survived by his widow who died in 1942, and by six children: Arilla Gray, May Gray, Bentley Gray, Lawrence Gray, Charlie Gray and Howard Gray, who constituted his sole and only heirs at law; that on January 16, 1937, said Howard Gray sold and conveyed to said May and Arilla Gray in equal undivided interests his undivided one-sixth interest in and to said lands; that on February 3, 1937, said May Gray and Arilla Gray executed and delivered to appellant, Bentley Gray, and to appellee, Charlie Gray, a deed reciting conveyance in equal undivided interests of the undivided one-fourth interest each of said May Gray and said Arilla Gray in and to said lands, thereby making the appellant, Bentley Gray, and appellee, Charlie Gray, each the record owner of an undivided 5/12ths interest in and to said lands; that on September 12, 1938, the undivided 1/6th interest of said Lawrence Gray, who was then deceased, was conveyed by Commissioner's Deed to May and Arilla Gray; that on August 2, 1939, appellant, Bentley Gray, erroneously believing that he was the owner of an undivided 1/2 interest, rather than the record owner of an undivided 5/12ths interest, in and to said lands, conveyed

to his son and daughter, the appellants, Clyde Gray and Lillian McAllister, in equal undivided interests, all his undivided "1/2" interest in and to said lands, reserving unto himself a life estate therein that on July 5, 1957, said May Gray died leaving a last will and testament, giving and devising to her sister, Arilla Gray, her undivided interest in and to said lands, thereby making the said Arilla Gray the record owner of an undivided 1/6th interest in and to said lands; that on September 8, 1957, said Arilla Gray executed and delivered to appellee, Charlie Gray, her deed purporting to sell and convey to said Charlie Gray an undivided one half interest in and to said lands, which deed was filed for record September 27, 1957, thereby constituting a cloud upon the record title of appellants, said complaint praying that title in and to an undivided 5/12ths interest in and to said lands be quieted, vested, and confirmed in appellant, Bentley Gray, for life and the remainder in fee be quieted, vested and confirmed in equal undivided interests in appellants, Clyde Gray and Lillian McAllister.

The answer and counterclaim filed by appellee admits that on January 16, 1937, May and Arilla Gray acquired the interest of Howard Gray, each thereby becoming the owner of an undivided 1/4th interest in and to said lands; but alleges that Lawrence Gray had died intestate prior to January 16, 1937, leaving surviving him a minor son, Lawrence C. Gray; that prior to January 16, 1937, said May Gray and Arilla Gray were attempting to acquire the undivided 1/6th interest of Howard Gray and the undivided 1/6th interest of the minor, Lawrence C. Gray, for the purpose of creating and vesting the lands in May Gray, Arilla Gray, Bentley Gray and Charlie Gray; that at the time of the execution of the deed in February 1937, from May Gray and Arilla Gray to Bentley Gray and Charlie Gray, said parties obtained the services of a law firm in Clarksville, explaining to said attorneys that May and Arilla Gray had acquired the interest of said Howard Gray and were desirous of conveying to Bentley Gray and Charlie Gray each a 1/2 interest in the interest so

acquired from Howard Gray, or a 1/12th interest in the lands as a whole, thereby vesting in Bentley Gray and Charlie Gray an undivided 1/4th interest each in and to said lands to the end that when the interest of Lawrence C. Gray, the minor, could be acquired, the said four named persons, May, Arilla, Bentley and Charlie Gray, would each own an undivided 1/4th interest in and to said lands, and that through error the deed of February 3, 1937, to Bentley Gray and Charlie Gray attempted to convey an undivided 1/4th interest each in said lands instead of an undivided 1/12th interest each, as was the intention of the parties; that on May 31, 1938, May and Arilla Gray obtained a Commissioner's Deed at a private sale of the undivided 1/6th interest of the minor, Lawrence C. Gray, thereby making each of them the owner of an undivided 1/4th interest in and to said lands; that May Gray died testate July 5, 1957, devising to Arilla Gray all her property (which included the 1/4th interest appellee alleged she claimed in the land here in question); that on September 8, 1957, Arilla Gray conveyed to appellee, Charlie Gray, her undivided one-half interest in said lands, reserving to Arilla Gray, by oral agreement, the rents and profits as the owner of an undivided one-half interest in the lands for her lifetime, and alleging that appellee, Charlie Gray, thereby became the owner of an undivided 3/4ths interest in and to the lands.

Appellants filed a reply denying each and every material allegation of the counterclaim.

The learned Chancellor on Exchange found the issues in favor of appellee and entered a decree dismissing appellants' complaint for want of equity, and finding and decreeing that appellee is the owner of an undivided 3/4ths interest; that appellant, Bentley Gray, is the owner of a life estate of an undivided 1/4th interest; and that Clyde Gray and Lillian Gray McAllister, are the owners, as tenants in common, of an undivided 1/4th interest, subject to the life estate of appellant, Bentley Gray.

This appeal followed.

Since the filing and docketing of the appeal in this Court, appellant, Bentley Gray, has died, and the present appeal is prosecuted by appellants, Clyde Gray and Lillian Gray McAllister.

For reversal, appellant masterfully argues seven points, all of which relate to the principal question presented for our consideration. That question is whether the court erred in reforming the deed of February 3, 1937, from May and Arilla Gray to Bentley and Charlie Gray.

After carefully examining all the other points and finding them to be without merit, we confine our discussion here to the above stated principal question.

It is undisputed that the February 3, 1937, deed from May and Arilla Gray to Bentley and Charlie Gray was a gift from the two sisters to their two brothers. There is ample evidence in the record to support the conclusions that prior to the making of the deed here in question Charlie Gray had entered into an oral contract for the purchase of the Lawrence Gray interest from the surviving son and widow of Lawrence Gray. That the sisters, May and Arilla, had, at the time of Charlie's negotiations with the son and widow of his brother, Lawrence, already purchased the interest of their brother Howard Gray. That May Gray, for herself and her sister, Arilla, was urging that Charlie Gray forego his right to purchase the Lawrence Gray interest and permit May Gray and Arilla Gray to purchase it in order for the property to be divided equally between May Gray, Arilla Gray, Bentley Gray and Charlie Gray. Apparently, these four brothers and sisters enjoyed an extremely close family relationship.

In consideration of the agreement to so create an equal ownership in the lands by those four persons, Charlie Gray relinquished his right to buy the Lawrence Gray property and while Lawrence Gray's interest had not been bought by May and Arilla Gray, it was agreed

that Charlie Gray would forego his right to purchase and that the same would be bought and subsequently such interest was bought by May Gray and Arilla Gray.

The real basis of this lawsuit occurred and grew out of the attempt of the parties to carry into effect the proposed agreement of ownership in the nature of a family settlement, setting up a gift of one-twelfth interest by May Gray and Arilla Gray to each of the brothers, Bentley Gray and Charles Gray, thereby vesting in Bentley Gray his one-sixth interest by inheritance from his father, and an additional one-twelfth interest by gift from May Gray and Arilla Gray, creating a one-fourth total interest in the lands in Bentley Gray and by the same method creating in Charles Gray a one-fourth undivided interest in the lands. The remain-one-half interest would be owned equally by May Gray and Arilla Gray in that each would own her one-sixth by inheritance and would own an additional one-twelfth by purchase from the Lawrence Gray Estate. Thus, in effect, when the purchase of the Lawrence Gray property interest had been made, an equal division between those four persons would occur. In order to carry out that determination, and subsequent to the purchase of the Howard Gray one-sixth, but prior to the purchase of the Lawrence Gray one-sixth, but while such last mentioned purchase was in contemplation, the parties went to the office of Reynolds and May, Attorneys in Clarksville, and explained to Mr. Reynolds that May Gray and Arilla Gray had purchased the Howard Gray interest and were contemplating and contracting to purchase the Lawrence Gray interest and wanted deeds executed in such a manner that when the plan had been accomplished, each of the four persons: May, Arilla, Bentley, and Charlie would own a one-fourth interest in the lands of their deceased father. That after said plan and interest had been figured out and determined and reduced to writing as to directions on a paper described by appellee as the "yellow paper", this information was delivered to Mr. Charles Mays for appropriate preparation and execution of the deeds in compliance

with this agreement. Actually, to effect that agreement, a conveyance of one-twelfth interest to the appellant, Bentley Gray, and a one-twelfth interest to the appellee, Charlie Gray, would have vested in each of said persons a one-fourth interest in the lands and when the acquisition of the Lawrence Gray property was completed by May and Arilla Gray, their share would have been one-fourth each. Apparently, through the error of the scrivener, Mr. Charles Mays, the deed was so prepared as to convey an undivided one-fourth interest each to Charles Gray and to Bentley Gray.

Unquestionably, the conveyance to Bentley Gray was voluntary, but insofar as it affects Charlie Gray, it was made in consideration, such as it was, of his relinquishing his right to the purchase of the Lawrence Gray property, which though doubtfully enforceable at law, was a moral obligatory agreement between the parties, sisters and brothers, from which there was no attempt to renege and was eventually accomplished as testified to by the appellee, Charlie Gray, and evidenced by the records of the Probate Court of Johnson County.

The deed from May Gray and Arilla Gray to these parties was made on February 3, 1937, and was immediately filed for record. There is a dispute as to what became of the Deed after its recordation, but there can be no serious dispute as to the acts of the parties in their then belief, and subsequently thereto, as to the interests that had been conveyed.

The record reflects that during all the period of time from February 3, 1937, until April 1959, the date of filing this action, the parties were in complete accord in that each owned a one-fourth undivided interest. They lived in harmony in the distribution of the rents, in the payment of taxes, and in the execution of leases, and in their intercourse with each other, all in the belief that May and Arilla Gray had given, and that Charlie Gray and Bentley Gray had received, without cost or money or effort to them, each an undivided one-twelfth interest in the lands by reason of the deed of February 3, 1937.

On trial *de novo,* we cannot escape the conclusion that the acts and conduct of the now appellant's father, Bentley Gray, was such as to lead one to the conclusion that he understood and appreciated and agreed that he was receiving by that conveyance a one-twelfth interest, and owned no greater interest than that, and that inherited from his father. His acts and conduct from that time unitl the time of this lawsuit were such as to indicate, not only to the other members of the family agreement, but to strangers, lessees of oil and gas interest and others, that such was the interest he had and claimed and received from his sisters, one of whom is now deceased.

Long after this original transaction and for the subsequent years between the year 1938 and the date of the final purchase by May and Arilla Gray of the Lawrence Gray interest, these parties divided the rents, one-fourth each, paid the taxes, one-fourth each, leased their land by separate leases describing their interest at one-fourth each, and in a similar instance executed one lease wherein they received a payment to the four as such, which, for years, was divided one-fourth.

May Gray died in 1957 leaving a will by which she left her property to her sister, Arilla Gray. Later, Arilla Gray, believing herself to be the owner of an undivided one-half interest in the lands, that is the interest of one-fourth which she retained in the original 1937 family settlement, and an additional one-fourth which her sister, May, retained by reason of that family settlement, conveyed that interest to Charlie Gray for the sum of Fifteen Thousand Dollars. During all that time, there was no dispute as to the ownership. The parties were still dividing the rents; at that time, Arilla one-half, Charlie one-fourth, and Bentley one-fourth. As late as April 1959, just prior to the bringing of this action, a check for One Hundred Dollars, representing the proceeds of one of the oil leases, was delivered and Bentley accepted his one-fourth interest in that as he had in the years gone by in all other rentals that had been received.

From what we have said above, we agree with the Chancellor that all of the parties understood the original 1937 gift to be a gift to establish an equal interest among the four, and was not an attempt by May and Arilla to denude themselves of all the interest they then owned.

This is one of those rare cases that falls squarely within an exception to the general rule that "a voluntary conveyance based on love and affection, and being without other consideration, is not subject to reformation."

The reason for the rule originally that equity will not reform a voluntary conveyance is as follows:

"The rule has its own limitations and exceptions. It was originally established in litigation between the donee and the donor; the universal rule being that the courts will not reform a voluntary deed in an action brought by the grantee against the grantor. The reason for the rule is that when one accepts the bounty of another he may not be heard to say, as against the donor, that something else should have been given. *Robertson* v. *Melville,* 60 Cal. App. 354, 212 Pac. 723. The grantor, not having received any consideration for the conveyance, is accorded the privilege of changing his mind and may not be compelled to make a gift previously intended and of which he has since repented, when no rights of others have intervened. . . . 23 R.C.L. 345." Also *Launderville* v. *Mero,* 86 Mont. 43, 281 p. 749, 69 A. L. R. 419.

This rule, however, as stated above, having such exceptions is further referred to in 45 Am. Jur. paragraph 29, page 599, where it is said:

"The rule against reformation of voluntary conveyances has its own limitations and exceptions. In a proper case, relief may be had as between parties claiming under the same instrument, the interests of the grantor not being at stake."

And 45 Am. Jur. paragraph 31, page 599-600 states:

"The grantor in a voluntary conveyance will be aided by the court, as where, by mistake, a larger estate or more land has been granted than was intended to be conveyed, and such relief may be granted even as against judgment creditors of the grantee or beneficiary or the grantee's or beneficiary's spouse. It is immaterial that the grantee is not cognizant of the mistake. . ."

*"So, also, a purchaser from the grantor is entitled to have a misdescription corrected in a voluntary deed given by his grantor prior to the purchase."* [Emphasis supplied.]

"So, also, according to some cases, the rule precluding reformation of voluntary conveyances is subject to an exception where the conveyance in question is executed as part of a family settlement." 45 Am. Jur. page 599, paragraph 30.

In the case at bar the evidence is not only clear, cogent and convincing, but overwhelming that a mistake was made in the February 3, 1937, deed. In this type deed, mutuality of mistake need not be shown even though from the record here it appears that there was a mutual mistake at the time of making the deed. It is only necessary to show that the deed did not carry into effect the intent of the donors. As was stated in the extensively annotated case of *Margaret Launderville* v. *Nellie Mero,* 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416:

"In so far as voluntary conveyances are concerned, the contracts are by their very nature unilateral. They are lacking in mutuality. But we think a court of equity has inherent power in a proper case to grant relief by *reformation of a voluntary conveyance so as to . . . express the intention of the grantor, even though, strictly speaking, the mistake is not mutual."* [Emphasis supplied.]

When Charlie Gray purchased for a valuable consideration the interest of his sister, Arilla Gray, he stepped into the shoes of the grantor in a voluntary con-

veyance. Therefore, under the aforesaid exception to the well settled rule that Equity will not reform a voluntary conveyance, he, upon such purchase, became "entitled to have a misdescription corrected in a voluntary deed given by his grantor prior to the purchase."

Affirmed.