[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 391 
Mellon Financial Services Corporation ("Mellon") filed suit against Jayne Y. Beasley, Richard Yarbrough, James J. Powell,[1] and W.B. Scott,[2] alleging that through a mutual mistake of all parties, there was an error in the description of a certain two-acre tract of land that resulted in a house being built on the wrong property. Mellon sought relief under the theory of reformation and the theory of constructive trust. The trial court granted Mellon the relief it sought. Ms. Beasley and Yarbrough appeal. We affirm.
In July 1984, Yarbrough deeded 80 acres of land to Ms. Beasley. Subsequently, Yarbrough obtained a default judgment against Ms. Beasley. To satisfy that judgment, Ms. Beasley sold approximately 40 acres of that land, which had been subdivided into five parcels, to Powell, who gave Ms. Beasley a promissory note and secured the payment of that note by a purchase money mortgage to Ms. Beasley. To secure her debt to Yarbrough, Ms. Beasley then executed to Yarbrough an assignment of that note and that mortgage as collateral. Subsequently, Ms. Beasley and Yarbrough executed a release of parcel 3 from the collateral assignment and from the mortgage. Thereafter, Powell obtained a construction loan from JMW Enterprises, Inc. ("JMW"), and then executed a mortgage to JMW conveying parcel 3 as security for the loan. JMW assigned the mortgage that had been executed for the purpose of financing Powell's house to Mellon. Ultimately, Powell's house was constructed, but not on parcel 3, which was the two-acre tract of land that Yarbrough had released from the collateral assignment, and on which Mellon held the mortgage. Rather, Powell's house was constructed on an adjacent two-acre tract of land that was located in parcel 5.
Powell never made any payments to Mellon; therefore, Mellon foreclosed on parcel 3, the lot on which the parties intended Powell's house to be constructed. In addition, Powell became delinquent in his payments to Ms. Beasley. As a result of Powell's failure to pay Ms. Beasley, she accepted from Powell a deed in lieu of foreclosure on the two-acre tract in parcel 5, on which the house had actually been constructed. Prior to accepting the deed in lieu of foreclosure, Ms. Beasley had discovered that Powell's house had not been constructed on parcel 3, but on the adjacent two-acre tract in parcel 5.
The trial court heard ore tenus evidence and made detailed findings of fact. Those findings of fact pertinent to this appeal are as follows:
 "Based upon the evidence presented to the Court, the Court specifically finds that it was the intent of Beasley, Yarbrough, and Powell that Powell receive two acres free and clear from the Beasley mortgage for the purpose of building his home on said site. It is clear from the testimony that Powell needed to have *Page 392 
two acres free and clear from said mortgage in order to induce [JMW] to build his home on said property. Further, it is clear from the testimony that within the entire [40] acres which Beasley sold to Powell, there was no significant difference in any particular two-acre tract of said land from any other particular two-acre tract contained within the whole parcel. . . .
 "6. [Mellon] has requested the Court to reform the description contained in various documents presented to the Court so that the end result will be that Mellon owns the particular two-acre parcel on which the house is located . . . due to the fact that [Mellon] foreclosed on the Powell mortgage which was made for the purpose of financing the house in question. . . .
 "7. In the instant case, the Court finds that [Mellon] has proved with clear, convincing, and satisfactory evidence that the intention of the parties was that Powell should receive a two-acre parcel of property free and clear from the Beasley mortgage on which he was to build his home. The Court is convinced by the evidence that through mutual mistake among Beasley, Yarbrough, Powell, and [JMW], the parcel released from the Beasley mortgage and the parcel on which the Powell home was built are not the same. Further, the Court finds that it is significant that . . . when Beasley accepted a deed in lieu of foreclosure from Powell, she was admittedly aware that the home had not been built on the parcel of property which had previously been released from her mortgage. . . . From the testimony presented at trial, it is clear that Powell was a party to a mutual mistake in that he is the one who selected the plot upon which the house was to be built and he is the one who executed the mortgage in favor of [JMW], which induced them to build the house on the property which he had designated. For this reason, if Powell had not executed a deed in lieu of foreclosure to Beasley, it is clear that Mellon would have been entitled to reformation against Powell of the mortgage which it subsequently received by assignment from [JMW], due to the mutuality of mistake which existed between [JMW] and Powell at the time the mortgage was executed and the home was constructed. As Mellon would be entitled to reformation against Powell, the statutes . . . in regard to deeds in lieu of foreclosure make it abundantly clear that Mellon is also entitled to reformation against Beasley and Yarbrough. Further, the testimony of Beasley at trial indicates that she was well aware of the situation at the time she accepted the deed in lieu of foreclosure, and further, that she did not acquire any rights in the property for value. The Court finds that it would not be prejudicial to Beasley or Yarbrough to reform the documents as requested by Mellon due to the fact that Beasley did not acquire her rights in good faith and for value. For all of the reasons set out above, the Court is convinced that Beasley and Yarbrough are parties to a mutual mistake and that equity requires that the reformation requested by Mellon be granted.
 "8. [Mellon] has also requested relief under the theory of a constructive trust. . . . In the instant case, it is clear that Beasley unfairly holds [a] property interest in the parcel of land on which the house is located and that said parcel of property justly belongs to Mellon. Beasley was aware of the mistake at the time she accepted the deed in lieu of foreclosure and she has not paid anything for the home. Likewise, it is clear from the evidence that Mellon has paid for the home and to allow Beasley to retain title to the property on which the home is located and . . . the home itself would allow her to become unjustly enriched at the expense of Mellon.
 "9. In conclusion, the Court finds that Mellon is entitled to the relief which it has requested both under the theory of reformation and under the theory of constructive trust. The Court finds that these theories are not inconsistent and that equity can be served under both theories by ordering that Mellon deed to Beasley the property interest which was *Page 393 
obtained by foreclosure on Powell by Mellon (the two-acre parcel on which the home is not located) and that Beasley deed to Mellon the two-acre parcel of property on which the home is located. Equity will then be served in that Beasley will own a two-acre parcel of property (on which the home is not located) of equal value. Beasley testified at trial that she did not claim any ownership interest in the home itself; therefore, the Court finds that she will be equitably served by receiving title to a similar parcel of property and further, that Mellon will be equitably served by obtaining title to the parcel of property on which its home is located."
Under the ore tenus standard of review, we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court's findings. See AmericanFamily Care, Inc. v. Irwin, [Ms. 89-828, September 14, 1990] ___ So.2d ___ (Ala. 1990).
The issues for our review are whether the trial court was plainly and palpably erroneous in holding that Ms. Beasley, by accepting a deed in lieu of foreclosure, assumed the same position as Powell in relation to Mellon; whether the trial court was plainly and palpably erroneous in holding that Mellon was entitled to have the documents in question reformed; and whether the trial court was plainly and palpably erroneous in imposing a constructive trust on the property in question.
It is well established that equity is a system of remedies that evolved to redress wrongs that were not recognized by or adequately righted by common law. The trial court is authorized in equity proceedings "to mold [its decree]" so as to adjust the equities of all the parties and to meet the obvious necessities of each situation. BBC Investment Co. v. Ginsberg,280 Ala. 148, 152, 190 So.2d 702, 705 (1966).
A deed in lieu of foreclosure is any instrument, however denominated, whereby a mortgagor transfers to a mortgagee the mortgagor's rights in the mortgaged property. See Ala. Code 1975, § 35-10-50(1). Such an instrument transfers to the mortgagee all right, title, and interest of the mortgagor in the mortgaged property, including, but not limited to, all rights of redemption, statutory or equitable, unless expressly otherwise provided therein. See Ala. Code 1975, § 35-10-51(1). A deed in lieu of foreclosure does not affect the rights or interests of any person or entity other than the mortgagor in the mortgaged property. See Ala. Code 1975, § 35-10-51(5).
In the instant case, based on the above-cited statutes, when Ms. Beasley accepted from Powell the deed in lieu of foreclosure to all but the released parcel 3 (which previously had been foreclosed by Mellon), Powell transferred to Ms. Beasley all right, title, and interest that he possessed in the mortgaged property. Therefore, whatever cause of action Mellon would have had against Powell prior to the execution of the deed in lieu of foreclosure, afterward Mellon would have had against Ms. Beasley. Thus, the trial court, seeking to do equity, granted Mellon's request to reform the descriptions in the documents in question so as to reflect the intent of the parties.
Alabama Code 1975, § 35-4-153, provides that any person may sue to reform a deed, mortgage, or other conveyance that is based on fraud or mutual mistake. In the instant case, there is no allegation of fraud; therefore, the reformation must have been based upon mutuality of mistake between the parties. Where the reformation is based on mistake, the existence of a valid agreement to which the instrument can be made to conform essential. The trial court cannot make the instrument express a new contract for the parties. Rather, the principle on which reformation is based is clear — if the intent of the parties was to convey the property actually described, but the parties were induced to enter into the agreement by a mistake as to the extent or nature of the contract, there can be no reformation; however, "if the intent was to convey the property as it wasknown to exist, but the mistake was in the description,reformation is proper." McClintock on Equity, *Page 394 
Ch. 8, § 95 at 258 (1948). (Emphasis added.) Such an error establishes mutuality of mistake, and, when one seeks reformation it is immaterial who employed the draftsman. SeeClemons v. Mallett, 445 So.2d 276 (Ala. 1984). Where the sole ground for reformation is mistake, the mistake must be mutual as to all of the parties, but only in the sense that they must all have agreed to the same terms and have mistakenly assumed that those terms were property expressed in the instrument. Where there are several parties to the transaction, all parties must have intended the same agreement or else there can be no reformation. Whenever there has been a mistake in a deed so that it fails to express what the parties intended, a court of equity may, as between the parties, reform it in accordance with the transaction as it was actually agreed upon. See Cityof Oneonta v. Sawyer, 244 Ala. 25, 12 So.2d 82 (1943).
In order to reform a deed pursuant to the statute so as to express the intentions of the parties thereto, the party seeking reformation has the burden of proving with clear, convincing, and satisfactory evidence that the intention he seeks to substitute was that of both parties. Touchstone v.Peterson, 443 So.2d 1219 (Ala. 1983). Reformation will beallowed not only as against the original parties, but alsoagainst those claiming under them in privity, such as
representatives, heirs or devisees, legatees, assignees, voluntary grantees or judgment creditors, or purchasers from them with notice of the facts. See Clemons v. Mallett, supra; see, also, Thompson on Real Property, § 4675 (1958).
In the instant case, the mistake was in the description of the two-acre tract on which Powell's house was constructed. The trial court found that Mellon had proved with clear, convincing, and satisfactory evidence that the documents in question did not express the intentions of the parties and that it would not be prejudicial to Ms. Beasley or Yarbrough to reform those documents. After a thorough review of the record, we conclude that there was sufficient evidence to support the trial court's finding that the intent of the parties (both of Ms. Beasley as the original party and of Yarbrough as the assignee) was that the two-acre parcel on which Powell's house was to be constructed (parcel 3) was to be released from Ms. Beasley's mortgage so that Powell would own it free and clear so as to induce JMW to build his house; that there was no significant difference between any two particular two-acre tracts contained within the whole parcel; and that through a mutual mistake, the parcel released from the mortgage and the parcel on which Powell's house was constructed were not the same. In addition, because Ms. Beasley was aware that Powell's house had not been built on the two-acre tract previously released from the mortgage prior to her accepting the deed in lieu of foreclosure and because Ms. Beasley admitted that she accepted that deed without acquiring any rights in the property for value, the trial court could have inferred from that evidence that "equity requires that the reformation requested by Mellon be granted." Therefore, we hold that the trial court's reformation of the documents was not plainly and palpably erroneous.
The trial court further found that equity would be served by imposing a constructive trust on the property in question. A constructive trust is a remedy created to prevent unjust enrichment. A constructive trust " 'bears much the same relation to an express trust that a quasi contractual obligation bears to a contract. . . . [A]n obligation is imposed not because of the intention of the parties but to prevent unjust enrichment.' " See American Family Care, Inc., supra, quoting 3 Scott on Trusts, § 462.1 (1939). Equity may impose a constructive trust on property in favor of one beneficially entitled thereto when another holds title to the property by fraud, commission of wrong, abuse of a confidential relationship, or any other form of unconscionable conduct. SeeAmerican Family Care, Inc., supra, citing Keeton, Law onTrusts, 210 (5th ed. 1949); 4 Pomeroy Equity Jurisprudence, § 1053 (5th ed. 1941); and Walsh on Equity, § 106 (1930). Equity may also impose a constructive trust on property in favor of one beneficially *Page 395 
entitled thereto against a person who in any way, against the rules of equity and good conscience, either has obtained or holds and enjoys legal title to property that in justice that person ought not to hold and enjoy. See American Family Care,Inc., supra, citing 3 Scott on Trusts § 462.1 (1939) andRestatement of Restitution § 160, Comment a (1937).
 "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."
Beatty v. Guggenheim Exploration Co., 225 N.Y. 380,122 N.E. 378, 380 (1919). See, also, American Family Care, Inc., supra.
In the instant case, the trial court wrote, regarding the evidence:
 "[I]t is clear that Beasley unfairly holds [a] property interest in the parcel of land on which the house is located and that said parcel of property justly belongs to Mellon. Beasley was aware of the mistake at the time she accepted the deed in lieu of foreclosure and she has not paid anything for the home. Likewise, it is clear from the evidence that Mellon has paid for the home and to allow Beasley to retain title to the property on which the home is located and . . . the home itself would allow her to become unjustly enriched at the expense of Mellon."
After a thorough review of the record, we find sufficient evidence from which the trial court could have made those inferences; therefore, we hold that the trial court's imposition of a constructive trust on the property in question was not plainly and palpably erroneous.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, ADAMS and STEAGALL, JJ., concur.
[1] Because Powell never appeared, the trial court entered a default judgment against him. Therefore, he is not a party to this appeal.
[2] Scott, a registered surveyor, admittedly prepared a survey that located the existence of Powell's house on the wrong two-acre lot. Because of our disposition of this case, we pretermit any discussion of Mellon's cause of action against Scott.