BOLIN, Justice.
Wesley Kire Pullum appeals from a summary judgment in favor of Peggy Kent Pullum and the estate of James W. Kelly. We affirm.

Facts and Procedural History

John Pullum owned 160 acres of land in Geneva County. John had two. children, Wesley Pullum and Daisy Pullum Mills. John subsequently married Peggy Kent. On March 26, 2007, John instructed his attorney, James W. Kelly, to prepare a warranty deed, conveying 20 acres of the 160 acres to Peggy. The 20-acre parcel included John and Peggy’s homestead. The deed described the land as: “The S 1/2 of the SW 1/4 of the NE 1/4 of Section 16, Township 2, Range 25, Geneva County, Alabama, containing 20 acres more or less.” The deed was recorded in the probate office.
On September 17, 2007, John and Peggy signed a deed prepared by Kelly conveying 80 acres of the 160 acres to Daisy. That same day, John and Peggy signed another deed prepared by Kelly, conveying 80 acres of the land to Wesley. The deed to Wesley described the land as the “S 1/2 of the NE 1/4 of Section 16, T2N, R25E, Geneva County, Alabama.” Kelly prepared a deed for Daisy and one for Wesley. Daisy delivered Wesley’s deed to Wesley, and Wesley’s wife later recorded the deed.
On October 24, 2007, John and Peggy instructed Kelly to file a corrective deed regarding their conveyance to Wesley. The corrective deed provided as follows:
“S ½ of the NE 1/4 of Section 16, T2N, R25E, Geneva County, Alabama. LESS AND EXCEPT: The S ½ of the SW 1/4 of the NE 1/4 of Section 16, Township 2, Range 25, Geneva County, Alabama, containing 20 acres, more or less.
[[Image here]]
“It is agreed and understood that this deed is a correction deed executed for the purpose of correcting that certain description in that certain deed executed by John Paul Pullum and wife, Peggy Kent Pullum to Wesley Kire Pullum, II, on September 17, 2007. It was not the intent for the grantors to deed to Wesley Kire Pullum the homestead of John Paul Pullum and wife, Peggy Kent Pul- *755 lum. It is further agreed and understood that the description in the deed executed on September 17, 2007, was a clerical error and that John Paul Pullum and wife, Peggy Kent Pullum intended for Peggy Kent Pullum to retain fee simple title to the 20 acres less and excepted from the above describe real estate.”
The corrective deed was recorded. John died and was survived by Peggy and his children, Daisy and Wesley. Kelly died and his law office was closed.
On July 10, 2008, Wesley filed a petition to quiet title to the 20 acres against Peggy. In his petition, Wesley alleged that he was the rightful owner of the 20 acres of land on which John and Peggy’s homestead was located. On August 8, 2008, Peggy filed an answer. On February 19, 2009, Peggy filed a third-party complaint against Kelly’s estate, alleging that Kelly had failed to exclude the 20 acres from the conveyance to Wesley and that she was entitled to compensation from Kelly’s estate for the 20 acres. On March 31, 2009, Kelly’s estate filed an answer and a counterclaim against both Peggy and Wesley. Kelly’s estate sought reformation of the deed to correct the mistake in the legal description of the property in Wesley’s original deed. On April 15, 2009, Peggy filed a counterclaim against Wesley, seeking reformation of the original deed.
On July 6, 2009, Kelly’s estate filed a motion for a summary judgment. Attached to the motion was an affidavit from Kelly’s former legal assistant that provided that she had made a clerical error and had failed to omit the 20 acres from the conveyance to Wesley and that John had. expressed his intent that the 20 acres be conveyed to his wife, Peggy. She stated that Kelly had instructed her to prepare a corrective deed and that the corrective deed include a statement of the intent of both grantors to exclude the 20 acres from the conveyance to Wesley. In response, Wesley filed his own affidavit and an affidavit from Daisy. Wesley’s affidavit provided that Daisy delivered a deed to him in September 2007 and that a dispute over timber on the land led to his discovery that a corrected deed had been filed. Daisy’s affidavit provided that Peggy and John signed the deed conveying land to Wesley, which had been prepared by Kelly with aid of his legal assistant. On October 12, 2009, Peggy joined the summary-judgment motion filed by Kelly’s estate.
On October 22, 2009, the trial court entered a summary judgment in favor of Peggy and Kelly’s estate. The trial court concluded that John and Peggy did not intend to give Wesley the 20 acres of land that included their homestead and that it was a scrivener’s error that had included the 20 acres in the conveyance to Wesley, who did not participate in the transaction conveying the 80 acres to him by mistake. The trial court stated: “In all equity and good conscience the deed shall be reformed to correct the scrivener’s mistake so as to exclude the 20 acres previously conveyed to Peggy Pullum. It would be unconscionable not to correct the mistake.” Wesley timely appealed.

Standard of Review

“Our review of a summary judgment is de novo. ‘A motion for summary judgment is granted only when the evidence demonstrates that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.’ Reichert v. City of Mobile, 776 So.2d 761, 764 (Ala.2000). We apply ‘the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact.’ Bussey v. John Deere Co., 531 *756 So.2d 860, 862 (Ala.1988); System Dynamics Int’l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala.1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).”
Borders v. City of Huntsville, 875 So.2d 1168, 1176-77 (Ala.2003).

Analysis

Wesley argues that a genuine issue of material fact exists as to whether the unilateral revocation in the corrected deed of the 20-acre interest conveyed to him by the original deed was valid. He also argues that the corrected deed was invalid under the parol evidence rule. Last, Wesley argues that the trial court erred in basing its ruling on unconscionability.
It is well settled in property law that equity may act to reform a deed if the deed does not accurately reflect the intent of the parties. One ground for reformation of a written instrument is mutuality of mistake.
“ ‘Mistake of fact is a well-recognized ground for interposition of a court of equity. 13 Am.Jur.2d Cancellation of Instruments § 31 (1964). Where it appears that by a mutual mistake of all parties the instrument does not conform to or express their intention or agreement, as where by mistake some material part of the instrument is omitted or the deed is drawn to convey a different interest or a greater or lesser estate than was agreed upon, relief may be had in equity against the other party to the conveyance or his privies. 23 Am.Jur.2d Deeds §§ 155,158 (1965).
“ ‘Although a deed in terms expresses the intention of the parties, if there is a material mistake as to the property to which those terms apply, such as to its identity, situation, boundaries, title, amount, value, and the like, a court of equity may grant appropriate relief. Goodrich v. Lathrop, 94 Cal. 56, 29 P. 329 (1892).’ ”
Long v. Vielle, 549 So.2d 968, 971 (Ala.l989)(quoting Palmer v. Palmer, 390 So.2d 1050, 1053 (Ala.1980)).
“[W]hen a writing through mutual mistake of the parties, or mistake of one of the parties, and fraud or deception on the part of the other, or mistake of the scrivener who drew the contract for the parties, contains substantially more or less than the parties intended or the intention of the parties is not expressed ‘due to inapt language’ it will be reformed to express the true intention of the parties.” Atlas Assur. Co., Ltd., of London, England v. Byrne, 235 Ala. 281, 282, 178 So. 451, 452 (1938). Alabama views scrivener’s errors as mutuality of mistake, and such errors are subject to reformation. Sherman v. Woemer Magnolia Farms, Inc., 565 So.2d 601, 604 (Ala.1990). A party seeking to have an instrument reformed must produce clear and convincing evidence that the instrument does not express the intent of the parties. Pinson v. Veach, 388 So.2d 964 (Ala.1980). “[T]he parol evidence rule is no impediment when one seeks to reform a conveyance because of mutual mistake.” West v. Law, 577 So.2d 445, 446 (Ala.1991); § 8-1-2, Ala. Code 1975. Generally, a unilateral mistake is not a ground for reformation. American Liberty Ins. Co. v. Leonard, 270 Ala. 17,115 So.2d 470 (1959). Reformation is authorized when there is fraud or ineq *757 uitable conduct on the part of the other party to the contract. Id.
In Gallups v. Kent, 953 So.2d 393 (Ala. 2006), a husband and wife executed a deed conveying property to George and Retha Gallups. The husband died and the wife executed a corrective deed purporting to reform the original deed to George and Retha to exclude Retha as a grantee. Years later, a declaratory-judgment action was filed to determine whether Retha’s heirs owned any interest in the property. The trial court determined that Retha’s heirs had an ownership interest. This Court affirmed the trial court’s judgment, stating:
“The purpose of a correction deed is to confirm the title conveyed by the original deed — typically by correcting an error in the description of the property. A grantor cannot use a correction deed to unilaterally terminate or revoke an interest conveyed by the original deed.”
Gallups, 953 So.2d at 395.
Gallups is distinguishable from the present case because in that case only one of the grantors executed the corrective deed, and because the conveyance in Gallups was based on consideration. This Court has addressed reformation based on conveyances that were intended as gifts. In Stone v. Hale, 17 Ala. 557 (1850), the father conveyed, in trust, land to his daughter (a married woman) for life and the reminder to her children. The father’s instructions were to draft the trust instrument so as to secure the property to the daughter free of the debts and control of her husband, but by mistake the attorney failed to include such words. One of the husband’s judgment creditors sought to attach the property. The Court held that equity would act to reform the trust instrument to reflect the father’s intent. There was a similar result in Whitehead v. Brown, 18 Ala. 682 (1851), where the father, who intended to convey property to his daughter, free and clear of her husband’s debt, failed to do so, and the Court held that the deed was entitled to reformation as against the husband’s creditors.
In Berry v. Sowell, 72 Ala. 14 (1882), a father conveyed a house and land to his married daughter, reciting only love and affection as consideration. The husband’s name was not on the deed, and the deed did not exclude the husband’s marital rights. Later, one of the husband’s creditors sought to attach the property to pay the husband’s debts. The Court held that the deed was subject to reformation because there was proof that the husband bought the property and paid a part of the price with moneys belonging to the wife, who conveyed it to her father, under an oral agreement between the three that the property should be conveyed to the wife (daughter) as an equitable separate estate, and that it had not been properly conveyed due to a mistake on the part of the draftsman.
Although this Court has not expressly addressed the issue whether the general rule precluding reformation on the basis of a unilateral mistake when a deed is given in exchange for consideration is applicable when the deed is given as a gift and the grantor seeks reformation, other courts have. Those courts have reasoned that because gifts are unilateral in nature, then only a unilateral mistake is likely; thus, deeds conveying property as a gift may be reformed because of a unilateral mistake on the part of the grantor. The Kentucky Supreme Court has stated:
“[W]here property is conveyed as a gift, the transaction is by its very nature unilateral, and the grantee’s intent or conduct (other than acceptance) plays no part in fixing the rights of the parties. Mutuality of mistake as the basis of relief need only be established when *758 there is a mutuality of obligation, as in a contractual relationship.”
Twyford v. Huffaker, 324 S.W.2d 403, 406 (Ky.1958).
The Court of Appeals of Indiana has explained:
“When a deed is exchanged in a contractual relationship, both the grantor and grantee are obligated to perform in some type of fashion, which creates the opportunity for a mutual mistake to occur. Whereas, when a deed is given as gift, the grantor is the only party with an obligation, and, thus, only a unilateral mistake is likely to occur.”
Wright v. Sampson, 830 N.E.2d 1022, 1027 (Ind.Ct.App.2005).
“It is a well-settled general rule that equity will reform a voluntary instrument of conveyance at the suit of the donor when the instrument does not express the donor’s intent in making the gift.” Kemna v. Graver, 630 S.W.2d 160, 161 (Mo.CtApp.1982). “[Where] [t]he grantee has given nothing for the conveyance [ ] he is deprived of nothing; and he cannot complain if the mistake [in a deed] is corrected.” Tyler v. Larson, 106 Cal. App.2d 317, 319-20, 235 P.2d 39, 41 (1951). “And although a mutual mistake of the parties is required in most instances, if a settlor of a trust receives no consideration for the creation of the trust, a unilateral mistake on his part is sufficient.” Brinker v. Wobaco Trust, 610 S.W.2d 160,164 (Tex. Ct.App.1980). See also D.M. v. D.A., 885 P.2d 94 (Alaska 1994) (recognizing that, if the deed was a gift, then the donor need prove by clear and convincing evidence that she did not intend to transfer the interest she transferred and what specific interest she did intend to convey); Snyder v. Peterson, 62 WashApp. 522, 814 P.2d 1204 (1991) (recognizing the “unilateral gift exception” to reformation); Yano v. Yano, 144 Ariz. 382, 697 P.2d 1132 (Ariz.Ct.App. 1985) (holding that a grantor’s unilateral mistake was a sufficient ground for reformation of voluntary conveyances); Davidson v. Lane, 566 S.W.2d 891, 892 (Tenn.Ct. App.1978) (“[A] court of equity will reform a voluntary conveyance, made without consideration, to reflect the intention of the grantor.”); Nelson v. Harris, 32 N.C.App. 375, 232 S.E.2d 298 (1977) (holding that the grantor of a conveyance for which no consideration was given is entitled to reformation when the deed, as a result of the grantor’s unilateral mistake, fails to express the actual intent of the parties); Westcott v. Westcott, 259 N.W.2d 545, 548 (Iowa Ct.App.1977) (“Insofar as voluntary conveyances are concerned, they are unilateral and the court has the power to reform the deed to express the intentions of the grantor even though, strictly speaking, the mistake is not mutual.”); Gray v. Gray, 233 Ark. 310, 344 S.W.2d 329 (1961) (recognizing that a court of equity has the inherent power to grant relief by reformation of a voluntary conveyance to express the intention of the grantor); Jonas v. Meyers, 410 Ill. 213, 225, 101 N.E.2d 509, 515 (1951) (“Many jurisdictions, however, recognize an exception to the general rule and hold that the donor-grantor of a voluntary conveyance, or his heirs or successors in title, may have reformation as against a grantee, on the ground of mistake and in such case mutuality of mistake is not essential, it being immaterial that the grantee was not cognizant thereof.”); Laundre-ville v. Mero, 86 Mont. 43, 51, 281 P. 749, 750 (1929) (“The reason for the rule is that when one accepts the bounty of another he may not be heard to say, as against the donor, that something else should have been given. The grantor, not having received any consideration for the conveyance, is accorded the privilege of changing his mind and may not be compelled to make a gift previously intended and of *759 which he has since repented, when no rights of others have intervened.”); Lyon v. Balthis, 24 Ohio App. 57, 60, 155 N.E. 815, 816 (1926) (“[W]here the conveyance is purely voluntary, we hold the rule of law to be that if the conveyance represents a mere gift as distinguished from a sale the donor is ordinarily entitled to reformation on account of his own mistake, regardless of whether the mistake was shared in by the donee.”); Schrieber v. Goldsmith, 39 Mise. 381, 384, 79 N.Y.S. 846 (1902) (“Indeed the transaction between the mother and daughter was, in effect, a gift from the former to the latter, and in such a case a mistake of the donor in giving more than she intended at the time to give is sufficient to justify a decree for reformation.”); and Mitchell v. Mitchell, 40 Ga. 11, 15 (1869) (“The fair construction of this latter provision would seem to be, that as between purchasers for a valuable consideration and that grantor, the mistake must be mutual. But as the Court is not authorized in any case to relieve volunteers against mistakes by reforming the conveyance, it can hardly be a fair construction to say that the mistake must have been known to them at the time the deed was executed, before the grantor can be relieved by reforming a voluntary conveyance, executed by him, on account of mistake.”).
In short, although the general rule of equity is that reformation will not lie (in the absence of fraud, inequitable conduct by the other party, or knowledge by one party of the other party’s mistake) unless mutuality of mistake is shown, many courts recognize an exception to this general rule with respect to a voluntary conveyance, holding that a deed may be reformed on the request of the grantor of a voluntary conveyance on the basis of unilateral mistake alone. Based on our case-law, and the support from other jurisdictions cited above, we now hold that where a grantor seeks to reform a deed based on a unilateral mistake and that deed was voluntary, equity will act to reform the deed.[1] This view is also consistent with the Restatement, which states:
“A donative document, though unambiguous, may be reformed to conform the text to the donor’s intention if it is established by clear and convincing evidence (1) that a mistake of fact or law, whether in expression or inducement, affected specific terms of the document; and (2) what the donor’s intention was. In determining whether these elements have been established by clear and convincing evidence, direct evidence of intention contradicting the plain meaning of the text as well as other evidence of intention may be considered.”
2 Restatement (Third) of Property: Wills & Other Donative Transfers § 12.1 (2003). The requirement of clear and convincing evidence in the Restatement is consistent with our holding in Pinson v. Veach, supra, regarding the reformation based on mutual mistake.
*760 We recognize that Wesley argues that the corrective deed was invalid under the parol evidence rule. As noted in our earlier discussion, this Court has held that parol evidence is admissible to reform a deed based on mutual mistake. See § 8-1-2, Ala.Code 1975.[2] Now that we have held that a court can reform a deed that has been given to a grantee as a gift upon a showing that the grantor made a unilateral mistake, we see no impediment in allowing evidence of the grantor’s intention that contradicts the plain meaning of the text, as well as other evidence of intention, this approach being consistent with our caselaw allowing parol evidence in matters involving mutual mistake (see West v. Law, supra) and also consistent with the above-quoted view of the Restatement.
We must now address whether the trial court erred in granting Peggy and Kelly’s estate’s summary-judgment motion. In support of their motion, they filed the affidavit of Kelly’s former legal assistant. The legal assistant stated that she had made a clerical error in failing to omit the 20 acres from the deed conveying the property to Wesley because the grantors did not intend to convey the 20 acres to Wesley. In response, Wesley submitted his own affidavit and an affidavit of his sister, Daisy. Wesley’s affidavit stated that Daisy delivered a deed to him in September 2007 and that a dispute over timber on the deeded land led to his discovery that a corrected deed had been filed. Daisy’s affidavit stated that Peggy and John signed the deed conveying land to Wesley that had been prepared by Kelly with the aid of his legal assistant. Nothing in the affidavits filed by Wesley contradicts the evidence presented by Peggy indicating that Peggy and John never intended to give Wesley the 20 acres on which their homestead was located and that the mistake was a unilateral mistake on their part.
Last, Wesley argues that the trial court found that the original deed, which included the 20 acres, was unconscionable and that the trial court erred in reforming the deed based on unconscionability. He cites several cases discussing the elements of unconscionability.[3] Although the trial court uses the word “unconscionable” in its order, the trial court appears to have been attempting to convey the idea that in reforming the deed it was providing equitable relief. It should be noted that courts have occasionally referred to inequitable conduct as unconscionable. See, e.g., Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1224 (Ala.2010) (discussing the argument that the word “unjust” in the phrase “unjust enrichment” is referring to “in equity and good con *761 science”); Mantiply v. Mantiply, 951 So.2d 638 (Ala.2006) (discussing wrongful conduct as unconscionable conduct). Nothing in the trial court’s order, taken in context, indicates that the trial court found that the original deed was unenforceable as unconscionable.

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, MURDOCK, and SHAW, JJ., concur.

. No one disputes that the original deed to Wesley and the corrective deed were intended as a gift. The language in both deeds is as follows: "That in consideration of Ten Dollars and other valuable consideration to the undersigned grantor (whether one or more), in hand paid by the grantee herein, the receipt whereof is acknowledged, we, JOHN PAUL PULLUM and wife, PEGGY KENT PULLUM, (herein referred to as grantor, whether one or more), do hereby grant, bargain, sell and convey subject to the life estate reserved herein unto WESLEY KIRE PULLUM, II (herein referred to as grantee, whether one or more), the following described real estate, situated in Geneva County, Alabama....” See also Snyder v. Peterson, 62 Wash.App. 522, 529 n. 7, 814 P.2d 1204, 1208 n. 7 (1991)(“[A]ny nominal consideration accompanied by love and affection' is sufficient to justify reformation of a deed.”).

. “ ‘An unconscionable ... contractual provision is defined as a ... provision “such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.” ’ " Southern United Fire Ins. Co. v. Howard, 775 So.2d 156, 163 (Ala.2000) (quoting Layne v. Garner, 612 So.2d 404, 408 (Ala.1992)).

. "[Section 8-1-2 and § 35-4-153] enact into statutory law, in general terms, the law of reformation of instruments long existent. One principle, embodied in these general terms, and particularly applicable to the case before us, is thus stated: '... where "through mistake a written agreement contains substantially more or less than the parties to it intended, or, from ignorance or want of skill in the draftsman, the object and intention as contemplated by the agreement is not expressed in the written instrument by reason of the use of inapt expressions, equity will interpose and reform the agreement.” ' ”
City of Oneonta v. Sawyer, 244 Ala. 25, 26, 12 So.2d 82, 83 (1943) (quoting West End Savings Bank v. Goodwin, 223 Ala. 185, 187, 135 So. 161, 162 (1931)).