STUART, Justice.
Virginia Louise McClung (“Virginia”) appeals the judgment entered by the Morgan Circuit Court reforming a January 1979 deed that conveyed a remainder interest in 12 acres of land to her and her brother, Charles Green (“Charles”), who is now deceased, as joint tenants with the right of survivorship to instead convey a remainder interest in that property to them as tenants in common. We reverse and remand.
I.
On January 24,1979, in contemplation of being divorced, Elbert Green (“Elbert”) and Loretta Green (“Loretta”) executed a separation agreement in which they agreed to convey two parcels of property in Morgan County (“the property”) to their adult children, Virginia and Charles, “as tenants in common, reserving unto themselves a life estate therein.” That same day, Elbert and Loretta executed a warranty deed reserving to themselves a life estate in the property but otherwise conveying the property to Virginia and Charles “for and during them joint lives and upon the death of either of them, then to the survivor of them in fee simple.” None of the parties involved- appear to have recognized at that time the discrepancy between the separation agreement, which provided that Virginia and Charles were to take the property as tenants in common, and the deed, which conveyed the property to them as joint tenants with the right of survivorship; the deed was recorded on January 24, 1979. On January 26, 1979, the Lawrence Circuit Court entered an order finalizing Elbert and Loretta’s divorce; that order specifically “ratified and confirmed” the separation agreement they had executed two days earlier.
In July 1992, Charles died. His sole heir was his then 21-year-old daughter, Bridget Williams (“Bridget”). In January 1999, Elbert married Lela Virginia (“Lela”). Elbert and Loretta continued to possess the property throughout this time and split the rental income that was generated from a restaurant and from trailers that were stored on the property.
On June 17, 2007, Loretta died, leaving her entire estate to Virginia. A dispute subsequently arose between Elbert and Virginia regarding who was entitled to the rental income Loretta had previously received from the property, and, on June 21, 2007, an attorney retained by Virginia sent Elbert a letter outlining Virginia’s position that she was entitled to one-half of the rental income from the property. On July 11, 2007, Elbert initiated this action in the Morgan Circuit Court by filing a complaint seeking a judgment declaring him to be the rightful owner of all rents received from the property. He also sought reformation of the January 1979 deed, arguing that he and Loretta had intended for Virginia and Charles to take the property as tenants in common after his and Loretta’s life estate expired but that, owing to a mutual mistake, the deed had erroneously conveyed the property to Virginia and Charles as joint tenants with the right of survivorship. He was joined in the complaint by his granddaughter Bridget, who *215 would inherit her deceased father Charles’s future one-half interest in the property if the deed was reformed. Absent reformation, Charles’s future interest in the property would have been extinguished upon his death, and Virginia would take sole possession of the property upon Elbert’s death. Virginia filed an answer opposing Elbert’s and Bridget’s claims and asserting a counterclaim seeking one-half of the rental income derived from the property.
On July 28, 2009, Elbert died, and his widow Lela was substituted as a plaintiff. The trial court conducted a bench trial on February 17, 2010, and, on July 28, 2010, entered its final judgment, holding, in pertinent part, as follows;
“Accordingly, it is ordered and adjudged by the court that the subject deed is reformed and recast, in part, to read that the fee simple remainder interests in the tracts of land more particularly described therein are conveyed to Virginia Louise McClung and Charles Elbert Green, as tenants in common and not as joint tenants with right of surviv-orship.
“It is further ordered and declared by the court that after the death of Loretta H. Green and until his later death, Elbert O. Green was entitled to receive and retain for himself all rents derived from the real estate more particularly described in the subject deed.”
Virginia’s subsequent motion to alter, amend, or vacate that judgment was denied on October 15, 2010, and, on November 19, 2010, Virginia filed her notice of appeal to this Court.
II.
This case was decided by the trial court without a jury.
“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ Philpot v. State, 843 So.2d 122, 125 (Ala.2002). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Id.”
Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005).
On appeal, Virginia challenges only that part of the trial court’s judgment reforming the January 1979 deed; she expressly states that she is not contesting the trial court’s judgment insofar as it held that Elbert was entitled to the entirety of the rental income derived from the property during the period between Loretta’s death and his own death. The issue before this Court is therefore whether sufficient evidence was adduced at trial to support the trial court’s reformation of the deed.
III.
In Beasley v. Mellon Financial Services Corp., 569 So.2d 389, 393-94 (Ala.1990), we explained the law relevant to the reformation of deeds as follows:
“Alabama Code 1975, § 35-4-153, provides that any person may sue to reform a deed, mortgage, or other conveyance that is based on fraud or mutual mistake. In the instant case, there is no allegation of fraud; therefore, the reformation must have been based upon mutuality of mistake between the parties. Where the reformation is based on mis *216 take, the existence of a valid agreement to which the instrument can be made to conform is essential. The trial court cannot make the instrument express a new contract for the parties. Rather, the principle on which reformation is based is clear — if the intent of the parties was to convey the property actually described, but the parties were induced to enter into the agreement by a mistake as to the extent or nature of the contract, there can be no reformation; however, ‘if the intent was to convey the property as it was known to exist, but the mistake was in the description, reformation is proper.’ McClintock on Equity, Ch. 8, § 95 at 258 (1948). (Emphasis added.) Such an error establishes mutuality of mistake, and, when one seeks reformation it is immaterial who employed the draftsman. See Clemons v. Mallett, 445 So.2d 276 (Ala.1984). Where the sole ground for reformation is mistake, the mistake must be mutual as to all of the parties, but only in the sense that they must all have agreed to the same terms and have mistakenly assumed that those terms were properly expressed in the instrument. Where there are several parties to the transaction, all parties must have intended the same agreement or else there can be no reformation. Whenever there has been a mistake in a deed so that it fails to express what the parties intended, a court of equity may, as between the parties, reform it in accordance with the transaction as it was actually agreed upon. See City of Oneonta v. Sawyer, 244 Ala. 25, 12 So.2d 82 (1943).
“In order to reform a deed pursuant to the statute so as to express the intentions of the parties thereto, the pai'ty seeking reformation has the burden of proving with clear, convincing, and satisfactory evidence that the intention he seeks to substitute was that of both parties. Touchstone v. Peterson, 443 So.2d 1219 (Ala.1983)
As in Beasley, there is no allegation of fraud in the instant case, and the trial court ordered the deed to be reformed solely on the basis of mistake. In Pullum v. Pullum, 58 So.3d 752, 757 (Ala.2010), we further explained that when property is conveyed as a gift, with no consideration being given by the grantee, reformation is permissible based on a unilateral mistake of the grantor regardless of the understanding of the grantee at the time of the conveyance. Therefore, we must determine whether there is evidence in the record indicating that both Elbert and Loretta intended to convey a remainder interest in the property to Virginia and Charles as tenants in common — as opposed to joint tenants with the right of survivorship — at the time they executed the January 1979 deed. See Fadalla, 929 So.2d at 434 (“In determining whether a mutual mistake exists, ‘[t]he initial factual question is, of course, what the parties intended the instruments to express at the time they were executed.’ ” (quoting Jim Walter Homes, Inc. v. Phifer, 432 So.2d 1241, 1242 (Ala.1983), citing in turn Behan v. Friedman, 218 Ala. 513, 119 So. 20 (1928))).
With regard to Elbert, there is some evidence in the record indicating that, at the time the January 1979 deed was executed, he thought it conveyed a remainder interest in the property to Virginia and Charles as tenants in common. When questioned by her attorney at trial, Bridget gave the following testimony on this subject:
“Q. And during [a June 2007 meeting that Elbert, Lela, and Bridget had with their attorney after Elbert received the June 21, 2007, letter from Virginia’s attorney] was there a discussion, about the deed?
*217 “A. [Elbert] brought it up to your attention [1] and was talking and stated that he wanted you to know and wanted to make sure that if something happened to him that I was going to get my share.
“Q. And then at that point, he got some advice that he wasn’t expecting to hear?
“A. Right.
“Q. And what happened when he got that advice?
“A. He was upset because he thought all along—
“[Virginia’s attorney]: Well, we object to ‘he thought.’
“Q. What did he say about the advice?
“A. That that’s not the way that it was supposed to be written.”
This testimony indicating that Elbert was surprised to learn that Bridget would not inherit Charles’s interest in the property supports the trial court’s finding that Elbert’s intent in executing the January 1979 deed was for Virginia and Charles to take a remainder interest in the property as tenants in common. However, before the deed can be reformed to conform with Elbert’s intent, there must also be evidence indicating that Loretta had that same intent when the deed was executed. The only specific evidence adduced at trial regarding Loretta’s intent was the following exchange between Virginia and her attorney after Virginia was questioned about Loretta’s understanding of the deed:
“Q. And how long have you known of the existence of that deed?
“A. I have been told about it ever since the divorce.
“Q. Okay.
“A. It [received] particular attention when my brother died.
“Q. All right. Now, who told you about it after the divorce?
“A. Mother, you know, told me about it many times.
“Q. Okay. What did your mother tell you about that deed?
“A. When they got the divorce, she was telling me the arrangements that they had made personally about other property and that the original tract of property had been deeded to me and my brother as sole survivors.
“Q. Elaborate on that, as sole survivors. Did she tell you whether or not there was a survivorship clause?
“A. She said that if something happened to me, everything would go to Charles. If something happened to Charles, everything would go to me.
“Q. Okay. So it would be your testimony that your mother was aware of the contents of the deed, Plaintiffs Exhibit 2, as of 1979 or '80 or thereabouts?
“A. Yes, yes.”
Of course, this testimony does not conclusively establish that the January 1979 deed accurately reflected Loretta’s intent, because, under the ore tenus rule, the trial judge is empowered to weigh the credibility of witness and determine how much weight to assign to their testimony. Eubanks v. Hale, 752 So.2d 1113, 1148 (Ala.1999). Nevertheless, before the January 1979 deed can be reformed, there must be at least some evidence indicating that Loretta did not intend to convey the remain *218 der interest in the property to Virginia and Charles as joint tenants with rights of survivorship.
Lela and Bridget argue, first, that the separation agreement and the divorce judgment provide sufficient evidence of Loretta’s intent to convey the remainder interest to Virginia and Charles as tenants in common to justify reformation of the January 1979 deed. We disagree. The discrepancy between the documents establishes that either the separation agreement or the deed did not accurately reflect Loretta’s intent at the time they were executed; however, the mere fact that there is a discrepancy between those documents sheds no light on which document is, in fact, erroneous.[2] Indeed, if the discrepancy between the separation agreement and the deed is a sufficient basis upon which to reform the deed pursuant to § 35-4-153, Ala.Code 1975, it would also have to serve as a sufficient basis upon which to reform the separation agreement pursuant to § 8-1-2, Ala.Code 1975, and the resolution of the discrepancy would then hinge merely on who sought to reform which document first, as opposed to specific evidence of the intent of the parties.
Lela and Bridget next argue that Elbert’s and Loretta’s intent may be gleaned from a note the attorney who assisted Elbert and Loretta with both the separation agreement and the deed wrote in approximately 1990 when Elbert and Lela went to him to inquire about selling the property. That note states in its entirety: “Mr. [Elbert] Green — all 4 have to sign to sell any — yourself, Virginia, Charles’s daughter Bridget & Loretta H. Green!” As Lela and Bridget have correctly noted, it would have been necessary for Bridget to authorize any conveyance of the property only if Virginia and Charles had been conveyed a future interest in the property as tenants in common and Bridget had inherited Charles’s interest when he died.
At trial, Lela stated that during her and Elbert’s meeting with the attorney, the attorney did not review the separation agreement, the divorce judgment, the deed, or any other documents before expressing his opinion about how the property could be sold. In deposition testimony submitted to the court, the attorney stated that he would have reviewed the deed before giving this advice and that he did not know whether he also looked at the separation agreement “because that deed speaks for itself.”[3] The attorney also acknowledged that during his many years of practice he had prepared at least some deeds containing errors that subsequently had to be corrected; however, he also expressed his opinion that the deed in this case was not erroneous.[4] Ultimately, therefore, this note might shed some light *219 on Elbert’s understanding of the deed — if one surmises that the attorney based his advice at least partially on information provided by Elbert — but evidence of Elbert’s intent does not prove Loretta’s intent. In sum, this note and the companion testimony of the attorney give no indication that the deed failed to encapsulate Loretta’s intent and, because there is likewise no evidence to that effect elsewhere in the record, the judgment of the trial court reforming the January 1979 deed must be reversed.
IV.
Following a bench trial, the trial court ordered that the January 1979 deed conveying a future interest in the property to Virginia and Charles as joint tenants with the right of survivorship be reformed to instead convey to them a future interest in that property as tenants in common. However, because there is no evidence in the record indicating that Loretta intended to convey the property to Virginia and Charles as tenants in common as opposed to joint tenants with the right of survivor-ship when she executed the deed in January 1979, reformation of the deed pursuant to § 35-4-153 was inappropriate. Accordingly, the trial court’s judgment is reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and PARKER, SHAW, and WISE, JJ., concur.

1. The attorney representing Bridget at trial was the same attorney with whom Elbert, Lela, and Bridget met in June 2007.

. Virginia speculates in her brief that perhaps her parents changed their minds regarding the manner in which they wished to convey the remainder interest in the interval between when they executed the separation agreement and when they executed the deed; however, given that Elbert and Loretta apparently executed the documents during the same meeting with their attorney, such a scenario seems implausible.

. The attorney offers no explanation as to why the legal advice he gave was inconsistent with the deed.

.Importantly, the facts in this case differ from those in Pullum, in which this Court upheld the reformation of a deed when there was testimony from a deceased attorney’s legal assistant acknowledging that there had been a clerical error in the preparation of that deed. 58 So.3d at 759. In this case, the attorney who prepared the deed in question specifically testified that he did not think that there was an error in the deed sought to be reformed.